## SUPERIOR COURT.

JAMES B. BRADY, Respondent agt. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW-YORK, Appellants.

The charter of the city of New-York, as amended April 12th, 1853, requires that all work involving the expenditure of more than $250, shall be done by contract on sealed bids, and that all such contracts when given shall be given to the lowest bidder. A contract entered into by the officers of the corporation, in violation of this provision, is illegal and void, and imposes no obligation on the city.

NEW-YORK PRACTICE REPORTS.          433

Brady agt. The Mayor, &c., of New-York.

Although bids are advertised for and received, yet, if they are tested by a comparison which brings into view only a part of the work contracted for, and by such means the contract is awarded to one who was not in fact the lowest bidder, the contract is invalid.

When the officers of the corporation called for bids for flagging a sidewalk and laying a curb and gutter, and the making of excavation of earth and rock, if any, and stated that the lowness of the bid would be tested only by the price at which the bidders offered to lay the flagging, curb and gutter, *held*, that a contract awarded upon such a test, when it was impossible to determine by such test who was the lowest bidder, was void in respect to the excavation.

Where the contract under which the work is done is void because entered into in violation of the charter, the contractor cannot recover for the work in any form, neither under the contract nor as upon a *quantum meruit*.

A subsequent ratification of the contract by the common council, whether before or after the work is done, does not make it binding on the corporation.

Where the officers of a corporation do an act in excess of the corporate power, the corporation is not bound, and when the statute under which the corporation act restricts its action to a particular mode, none of the agents through whom the corporation acts can bind it in any other than the mode prescribed.

The officers of the corporation cannot, therefore, in such a case bind the corporation by accepting the work or confirming an assessment to pay the expenses thereof.

Those who deal with a corporation, the mode of whose action is thus limited, must take notice of the restriction in its charter, and see to it that the contracts on which they rely, are entered into in the manner authorized by the charter.

*General Term, October*, 1857.

*Before* DUER, *Chief Justice, and* WOODRUFF, *Justice.*

THIS action comes before the court at general term, on an appeal by the defendants from a judgment entered against them on the report of a referee.

The action is brought upon an alleged special contract which the complaint avers was entered into with the plaintiff by the defendants, through James Furey, then street commissioner, on the 11th of August, 1854, whereby the plaintiff agreed to set the curb and gutter, and to flag a portion of Eighty-third street, (*i. e.*, from the Third Avenue to Avenue A,) in the city of New-York, in accordance with certain specifications annexed to the contract ; and the defendants agreed to pay for the work, labor and materials, the following prices, viz : for setting curb and gutter stones, forty-five cents per

running foot; for flagging, eleven cents per square foot; for removing rock, twenty-five dollars per cubic yard of rock removed. The amount to be paid upon the confirmation of an assessment for the work. That the work has been performed, and approved and accepted, and an assessment has been made for the work and confirmed by the defendants in common council convened, and the entire contract price is due and payable. The quantities of the respective kinds of work are then stated and averred to have been necessary to the performance of the contract, and in fact performed at the request of the defendants, and of their surveyor having charge of the work as follows :

| | |
|---|---:|
| 4,046 ft. 6 in. of curb and gutter, at 45 cents, | $1,820.92 |
| 15,686 feet of flagging, at 11 cents, | 1,725.46 |
| 943 yards of rock excavation, at $25, | 23,575.00 |
| | $27,121.38 |
| That the defendants have made payments of 70 per cent. of the amount due, | 18,985.27 |
| But refuse to pay the remaining balance, amounting to, | $8,136.11 |

Which balance the plaintiff claims to recover with costs.

The answer of the defendants sets out a resolution of the common council of the 8th day of June, 1854, ordering the setting of curb and gutter, and the flagging of the street referred to, under the directions of the street commissioner, and avers that the street commissioner issued proposals inviting offers or bids for the work, which proposals are annexed to the answer; in response to which, four offers were received, the offer of the plaintiff being one. That excluding from the offers the item of rock excavation, the offer of one J. Hodgkins, was the lowest. That only two of the offers included rock excavation, viz : the offer of the plaintiff, and that of one McCabe, and that McCabe offered to make the rock excavation at five dollars per cubic yard, and that in fact McCabe

was the lowest bidder for the whole work, including the actual rock excavation in the calculation.

That the rock excavation was the most important item in the entire work, provided for in the proposals and contract, but the defendants deny that the plaintiff excavated the quantity of rock claimed for.

The answer then sets up the provisions of the amendments to the charter of the city, passed April the 12th, 1853, requiring that " all work involving an expenditure of more than two hundred and fifty dollars, shall be done by contract, on sealed bids, and that all such contracts shall, when given, be given to the lowest bidder." The general ordinance of the corporation, providing that no expense shall be incurred by any of the departments or officers thereof, unless an appropriation should have been previously made concerning such expense, and denies that any such appropriation has been made for the expense of the work in question.

Also, a general ordinance of the corporation, requiring that the " proposals for estimates or bids shall contain and state the nature and extent, as near as possible, of the work required."

The answer then avers that a contract was made by the street commissioner with the plaintiff, by James Furey, (claiming to be authorized under the said resolution, proposals and estimates or bids,) to which the answer refers, and which is averred to be the contract mentioned in the complaint, and denying all allegations not admitted, the defendants demand that the complaint be dismissed, &c.

By consent of parties, the action was referred to a sole referee to hear and determine the same, and all the issues therein.

The referee found the following facts :

*First.* That the defendants, on the 8th day of June, 1854, duly passed the resolution mentioned in the answer of the defendants.

*Second.* That on the 27th day of July, 1854, the street com-

missioner published the proposal for offers or bids, also mentioned in the answer.

This notice (or "proposal,") invited offers from persons proposing to perform the work, and described the curb and gutter, and the flagging required, the kinds of stone, and the manner of cutting and laying. It stated that "the street is to be brought to the grade shown on the profiles in the street commissioner's office, the sidewalks to be regulated with sufficient rise from the curbstones, and the carriage-way to be properly shaped under the direction of the surveyor," that "the portions of the sidewalk on which flagging is to be laid shall be levelled to a grade of six inches below the top of the flags, and the intermediate space filled with sand or gravel, and the residue of the sidewalk graded even with the tops of the flags."

It directed that estimators should state in their proposals the price per running foot for furnishing and setting curb and gutter stones, including regulating and removing or furnishing earth; the price per square foot for flagging, including the regulating of the sidewalks and furnishing sand or gravel; also, the removal of all surplus material or rubbish after the completion of the work; and the price per cubic yard for removing rock, if any should be found.

And the notice then further continued, "The following is the estimate of work and materials by which the bids will be tested, viz: 3,840 running feet of curb and gutter stone, and 15,600 square feet of flagging."

After some other particulars not deemed material to be stated, the notice further states, that a strict compliance with the provisions of title III, of contracts for supplies and work for the corporation, of the amended ordinances, passed May the 30th, 1849, and also as amended October the 25th, 1849, will be observed and required in all cases.

The referee found :

*Third.* That the lowest bidder upon the data given in such proposal, (a notice inviting offers,) could not be ascertained.

*Fourth.* That the contract for said work was awarded by the street commissioner to the plaintiff, as set forth in the case on the 11th of August, 1854. .. . . . . . . . . . . . . . .

This contract is in substance as alleged in the complaint.

*Fifth.* That the work was completed in the autumn of 1854.

*Sixth.* That seventy per cent. of the contract price was paid to the plaintiff by the defendants.

*Seventh.* That 943 cubic yards of rock were removed by the plaintiff in doing the work.

*Eighth.* That the assessment list for said work was confirmed by the common council, by a resolution passed on the ninth day of August, 1856.

This assessment list showed that the amount due to the plaintiff as the *contract price* of the work, together with the incidental expenses connected with the work and the surveyor's, assessor's and collector's fees, was $28,746, of which the sum of $23,575, (being 943 yards at $25,) was for rock excavation as alleged in the complaint.

It assessed $5,093.15, upon the owners of lots along the line of the street, and left $23,653.85, to be paid by the corporation of the city of New-York.

*Ninth.* That the surveyor's return and inspector's certificate, were made and filed. The surveyor's return showing the number of yards of rock to be 943, and the inspector's certificate certifying that the curb and gutter and flagging, was finished according to the contract.

*Tenth,* and finally. That there is due to the plaintiff from the defendants, the sum of $8,566.24, principal and interest for work performed by him for the defendants.

The referee's conclusions of law upon the facts found by him are stated in the opinion of the court.

From the judgment entered upon the report of the referee, the defendants appeal.

A. R. LAWRENCE, JR., *for appellants.*
A. J. WILLARD *for respondent.*

By the court—WOODRUFF, Justice.   The referee has found as a conclusion of law from the facts proved, that it was the duty of the street commissioner, (in his notice inviting proposals for the work directed to be done by the common council,) to state the probable amount of rock excavation required, and to include that among the *data* by which the bids or proposals would be tested, and had no power, after excluding that part of the work from such *data*, to still go on and contract for its performance, and that the contract made by the street commissioner with the plaintiff, was illegal and void as regards rock excavation ; and that the plaintiff cannot by virtue of his contract recover the stipulated price for rock excavation.

These conclusions are obviously fatal to the plaintiff's claim to recover, as such claim is alleged in his complaint.   He has alleged a special contract, and the performance thereof, and claims to recover the stipulated price.   The contract proved, is found to be illegal and void, and it cannot, therefore, be the ground of recovery.

The referee, however, concludes that the plaintiff is entitled to recover the unpaid balance of the contract price, and upon several distinct grounds, viz :

That the plaintiff having done the work was entitled to receive what the work performed in making such rock excavation was reasonably worth, and that the defendants have legal power to pay for work, on the basis of a *quantum meruit,* though it was done without contract, or under an illegal and void contract.

That notwithstanding the contract under which the work was done was illegal and void, the confirmation of the assessment, made to provide for the expenses thereof, amounted to a valid agreement by the defendants, that the plaintiff should be paid the contract price.

That such confirmation was in legal effect an accord, and that such satisfaction should be enforced.

And finally, that the plaintiff's claim was a disputed claim which the defendants had power to settle, and that their acts

amount to a valid binding settlement which the plaintiff is entitled to enforce.

It is obvious to observe that there are no issues in this action adapted to raise the questions, upon the consideration of which the referee has decided in favor of the plaintiff. The ground of claim set forth in the complaint, is simply a special contract made with the defendants, duly performed by the plaintiff and his work accepted.

But assuming that the state of the pleading may be disregarded, and that the plaintiff could be permitted to claim payment as upon a *quantum meruit*, and might recover for the rock excavation what the work of making the same was reasonably worth; then so far as the judgment proceeds upon this ground, it is subject to what we deem these fatal errors: The referee awarded to the plaintiff the whole contract price, and disregarded such evidence as appeared in the case, tending to show that the rock excavation was not worth twenty-five dollars per yard, (the contract price,) when in truth proposals were made to do it at five dollars; and further, the referee refused to receive evidence offered by the defendants, of the actual value of the work, which evidence, so far as the plaintiff's claim was a title to recover what the labor was reasonably worth, was clearly, we think, admissible. It was perhaps rejected under an idea that the contract-itself fixed the value by stipulating the price to be paid, and that the value so fixed is conclusive.

Where parties have by a valid *binding* agreement, fixed the price to be paid for work and labor, such agreement is of course conclusive, and even though by reason of departures from the strict terms of such an agreement by mutual consent, the claimant finds it necessary to claim payment according to the fair value of his work, the agreement may still bind both as to the rate of compensation in particulars conforming to such agreement.

But this rule has no application to an agreement which is itself illegal and void; an illegal and void agreement no more bound the defendants to pay the price stipulated, if the work

was done, than it bound them in any other aspect. If it was void, it could neither form the basis of recovery, nor bind the defendants to the measure of liability.

To hold this contract conclusive in respect of price would be indirectly to sustain it in the very particular out of which the illegality arises. It was not a contract with the lowest bidder, and yet to hold it conclusive as to price, is to bind the corporation to pay the highest price bidden without any valid contract or legal consent to *any* price. The requirement binding the corporation to give contracts to the lowest bidder has especial reference to the *price* which they may become bound to pay, and the measure in which that price *shall* be ascertained ; and to hold a contract not so awarded conclusive on that point, is not only subversive of the law, but wholly inconsistent with the conclusion that the contract is itself illegal.

If the plaintiff claimed the value of his work, he should have proved its value, and the defendants were at liberty to give such evidence relevant to that point as they might be able. If the instrument alleged to be a contract was entered into by the defendants' officers in a manner not authorized by law, in a manner in which they had no power to bind the corporation, then the stipulations in that contract did not bind the defendants for any purpose.

And once more, there was some evidence bearing on the value of rock excavation in the testimony, showing that one of the proposals offered the performance of that part of the work at five dollars per yard. It may be true (doubtless it is) that even this is much more than the fair value ; but if so, the defendants were not permitted on the trial to prove it. Now, it is obvious that if this rate had been taken as the fair value, the plaintiff would not, upon the basis of a *quantum meruit*, have been entitled to recover anything. He had upon this basis been already overpaid.

We are, therefore, for these reasons, of opinion that even if any claim in the nature of an assumpsit for the value of the work could be sustained, a new trial must be ordered.

The suggestion that the confirmation of the assessment laid upon the lands adjacent to the work amounted to an agreement with the plaintiff, that he should be paid, appears to us unwarranted.

By the terms of the contract, which is held illegal and void, payment to the plaintiff was to be made on the confirmation of the assessment, and had the contract been valid, such confirmation would have been material as respects him, because the time of payment was thereby made definite.

But in every other aspect, the act of confirmation was, as respects the plaintiff, a purely *ex parte* proceeding, operating between the corporation and those whose lands were to be charged, but in no sense constituting an agreement with the plaintiff; and notwithstanding such confirmation, the inquiry whether the plaintiff is entitled to be paid, is, we think, clearly open to investigation.

The remark of Mr. Justice STRONG, in *Brady* agt. *The Mayor, &c., of Brooklyn*, (1 *Barb. Rep.* 591,) that a resolution to add a sum in question to an assessment was an acknowledgment of the debt, and a promise to pay it, if recognized at all, must be understood with reference to that particular case. There a matter in dispute had been informally referred. The persons selected had reported a sum due: the mutual assent of the parties to the amount reported due, amounted to a statement of an account between the parties: the resolution showed the defendants' assent, and the court say that when also assented to by plaintiff, the claim became valid, however informal the reference and the award thereon.

Aside from the peculiar circumstances of that case, we can see no propriety in calling a confirmation of the assessment an agreement with the plaintiff.

Such confirmation may be evidence that the work was done, and that the corporation accepted it as performance of the contract, and an admission of the amount thereof, and that is all.

The same observations are applicable to the idea that this confirmation was a valid accord. It has none of the elements

of an accord; there was no mutuality, and no consideration gives to it validity in this sense; it is simply and only a recognition of the plaintiff's right to payment under his contract. As an admission that the money was payable, it would be material to the plaintiff as evidence, if notwithstanding the illegality of the contract, the corporation had power to bind themselves by mere admissions.

In regard to the argument that the plaintiff's claim was a disputed claim which the defendants had power to settle, and that their acts amount to a binding settlement, we observe, first, that the facts as found by the referee in this case lay no foundation for any such proposition. Nothing in the facts as found intimates that there was any dispute or controversy on the subject, prior to the commencement of this action. They show a confirmation of the assessment, a compliance by the plaintiff with the conditions of the special contract, and a part payment by the defendants of the stipulated price, and that is all.

We find, it is true, in the case *some evidence* that the plaintiff's claim was the subject of inquiry and investigation by a committee of the common council: but the finding of facts would not inform the court that anything in the nature of a settlement of a disputed claim had taken place upon which the plaintiff can rely, if he is not entitled to recover upon other grounds, nor do we think the evidence showed such a settlement. The investigation had before the committee was for the information of the defendants, and as a guide to the common council in their action upon the subject, not for the purpose of negotiation, nor did it result in negotiation or arrangement *inter partes.* Whatever operation the confirmation by the common council after that investigation may have as evidence of an acceptance or approval of the work, has been already noticed, and will be hereinafter further considered.

We have thus considered briefly the specific grounds upon which the plaintiff claims to recover, notwithstanding the illegality of the contract, so far as they are distinguishable from the general ground, that the work being performed, accepted

and approved by the defendants, they are bound to pay for it whether there was a valid contract or not.

This ground of claim, we think, is all that arises out of the performance of the work or the acts of the common council in relation thereto; and if it be sound, then the plaintiff was entitled to payment either at the contract price, or according to the fair value of the work.

Before noticing further this general ground of claim, it is proper that we should say, that we concur fully with the referee in his conclusion, that the contract itself was illegal and void, and that the plaintiff could not, by virtue of the contract, recover the stipulated price for rock excavation.

And it is material to notice, that the invalidity of the contract results from the want of power to make a contract in the manner this was made, for the purposes for which it was made. It was entirely competent to prescribe in the charter of the city the mode in which and in which alone, contracts should be made. When the powers of a corporation are limited in the charter, the acts of its officers and agents beyond the scope of those powers, do not bind the corporation. And when the mode in which the powers of a corporation may be exercised, is especially restricted, the officers and agents may not bind the corporation in any other manner. As WELLES, Justice, in *The Farmers' Loan and Trust Company* agt. *Carroll*, (5 *Barb. Rep.* 649,) says : " Where a corporation relies upon a grant of power from the legislature to do an act, it is as much restricted to the mode prescribed by the statute for its exercise as to the thing allowed to be done."

Those who deal with a corporation, whose mode of dealing is prescribed in their charter, must take notice of such prescription at their peril. In this case, the contract in question was not given to the lowest bidder.

The officers of the corporation did not take proposals from those who offered to perform the work, in a form in which it was possible to determine who was the lowest bidder. The plaintiff not only was bound to know this, but he had actual knowledge that neither the invitation for bids nor his offer

connected therewith, could enable any one to say who was the lowest bidder.

The case is not one in which all the proper elements have been taken into view, in considering whose bid was the lowest, and in which the erroneous determination by which the work was awarded to the plaintiff, resulted from unforeseen circumstances developed in the progress of the work; as where notwithstanding estimates made in good faith, the amounts or quantities were found more or less than the estimates. But it is a case, in which the great bulk of the work was laid entirely out of view, and the bids tested by what has proved a small portion of the labor stipulated for, when the residue of the work was deliberately, expressly and designedly excluded from comparison.

Not only was the statute provision of the charter violated, but the general ordinances of the city were disregarded. We feel no hesitation in concurring that a contract so made in violation of the charter, and of the general ordinances, was illegal and void, and imposed no obligation on the corporation of any kind in respect to its stipulations, whether as to price or other terms or conditions thereof.

We also observe on the subject generally, that the corporation of the city, in the matter of contracts of this description, are acting not simply as an individual acts in respect to his private interests, nor as a private corporation acts in relation to its property or concerns. They derive no property and gain no corporate benefit from the improvement of streets or other public work. They act as a public corporation in discharge of duties, and the exercise of powers which they hold as trusts for the benefit, (not of the corporation as such,) but for the citizens at large and for the public.

Not only so, they are trustees and agents in another sense. The exercise of their powers in matters such as are included in this contract, proceeds upon the assumption of benefit to contiguous land owners, to be secured through the agency of the corporation, not at their own cost, but at the land owners' expense. And that agency involves further, the creation of a

lien upon the lands, and the enforcement of the rights of the land owners bound to contribute as between themselves. So that the defendants, as a private corporation, may be said to have no interest in the subject, but to act throughout as trustees and agents of the public and the land owners; and to be clothed with the requisite powers only for the benefit of such owners and the public.

Danger of abuses under such circumstances, is to be regarded as the reason and ground of the restriction, which requires that the contracts for work, &c., shall be given to the lowest bidder; to the end that the tax payers, or those charged with the expenses, may not be unjustly or unduly burdened, while the benefits contemplated by the proposed contracts may be secured.

The question then recurs: Are the defendants liable for work done, the contract therefor being illegal and void, because entered into in violation of the charter? And this question remains to be discussed in two aspects, in the present case. Are they liable to the plaintiff as upon a *quantum meruit*, because the work has been performed and is accepted? And have the common council power to waive the original defect in the plaintiff's claim, and by their action affirm his title to recover, so as to give him a right of action notwithstanding the requirements of the charter have not been complied with?

The answers to these questions seem to us inevitable and too obvious to allow of extended discussion. If either be answered affirmatively, the restrictions in the charter become practically null, and the officers and agents, through whom alone the corporation can act, may disregard the statute and in practice repeal it. This, to our minds, is the prominent objection to the plaintiff's claim, and laying out of view every other objection above suggested to the recovery in this case, (except so far as they are connected with this consideration,) it seems to us fatal to the plaintiff's case.

The corporation can only act through its chosen officers and agents. If they not only may pay for work and labor actually done without a compliance with the statute requisites, but are

legally bound to such payment, then no contract is necessary, and the restrictions in the statute are a dead letter. If they may dispense with a contract, then and then only, can they confirm an illegal and void contract, and then also by any acceptance of the work and a confirmation of the contract by resolution, they repeal the statute *pro hac vice*. The relation which the corporation and its officers bear to the subject, the duties they owe to the public, and those upon whom the burden is to fall, and the nature of the powers they possess, forbid us to concede any such force to their acts. By the charter the power is limited, and it is a familiar rule that corporations can only bind themselves by contracts they are expressly or impliedly authorized to make.

It may sometimes seem a hardship upon a contractor that all compensation for work done, &c., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere volunteer and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know, before he places his money or services at hazard.

The analogy drawn from the obligation of an individual to pay for work which he accepts, although there has been no previous contract for its performance, wholly fails to reach the present case. Here, neither the officers of the corporation nor the corporation, by any of the agencies through which they act, have any power to create the obligation to pay for the work, except in the mode which is expressly prescribed in the charter; and the law never implies an obligation to do that which it forbids the party to agree to do.

And for the like reason the defendants cannot be treated as ratifying the unauthorized acts of its agents. *The difficulty lies not merely in the want of original power in the agents to make the contract, but in the want of power in the corporation itself to make the contract otherwise than in the mode prescribed by the charter.*

An individual having power to make a contract may ratify or affirm it, when made by one who without authority assumes to be his agent, but if the individual have himself no such power he can no more bind himself retroactively to its performance by affirmance or ratification, than he could have done so prospectively in the first instance. The power to ratify *ex vi termini*, implies a power to have made the contract, and the power to ratify in a particular mode, implies the power to have made the contract in that manner.

An express resolution directing the plaintiff to perform the work would not have been valid or bound the defendants, and a resolution in any terms ratifying what is done by the officers of the corporation in violation of the charter, can have no greater effect. (*Boon* agt. *The City of Utica*, 2 *Barb. R.* 104; *Blood* agt. *Goodrich*, 12 *Wend. R.* 104; *Hodges* agt. *The City of Buffalo*, 2 *Denio R.* 113; *McCullough* agt. *Moss*, 5 *Denio R.* 567.)

We have considered the case without noticing a further ground of objection to the invalidity of the plaintiff's contract, and what was done in relation thereto, viz: that the general ordinances of the city were violated in making the contract, and that the subsequent acts of the common council in a particular case cannot be regarded as giving validity to an act in violation of those ordinances, and that those ordinances as effectually exclude the idea of a valid ratification of what was illegally done as if they were incorporated in the charter. In placing our opinion upon the grounds above stated, we do not design to express any opinion upon that question.

The case of *Russ* agt. *The Mayor, &c.*, (December special term, 1853,) and also the cases of *Smith* agt. *The Mayor, &c.*, (4 *Sandford Rep.* 221,) and *Christopher et al.* agt. *The Mayor, &c.*, (13 *Barbour Rep.* 567,) may be profitably consulted in reference to the whole subject. We are constrained to say that the judgment herein must be reversed, and a new trial ordered. Costs to abide the event.

Order accordingly.