## HENRY ZOTTMAN *v.* THE CITY AND COUNTY OF SAN FRANCISCO.

A MUNICIPAL corporation derives all its power from its charter, and where its charter prescribes the mode in which its contracts shall be made, no contract will bind the corporation unless made in that mode.

A contract made by individual members of the Common Council of the "city of San Francisco "—a municipal corporation—in a manner not authorized by its charter, and in disregard of the forms therein directed to be observed in the making of its contracts, is not the ground of any claim against the city.

Individual members of the Common Council of the city of San Francisco were not, by the charter of 1851, invested with any power to improve the city property, and any directions given or contracts made by them upon the subject had the same and no greater validity than like directions given and like contracts made by any other residents of the city assuming to act for the corporation.

A contract not in its origin obligatory upon the corporation, by reason of not having been made in the mode prescribed by the charter, cannot be affirmed and ratified in disregard of that mode by any subsequent action of the corporate authorities, and a liability be thereby fastened upon the corporation.

Ratification is equivalent to a previous· authority.   It operates upon the contract in the same manner as though the authority to make the contract had existed originally.

The power to ratify necessarily supposes the power to make the contract in the first instance ; and the power to ratify in a given mode, supposes the power to contract in the same way.

Thus, where the charter of a municipal corporation authorizes a contract for work to be given only to the lowest bidder, after notice of the contemplated work in the public journals, a contract made in any other way—that is, given to any other person than such lowest bidder—cannot be subsequently affirmed.   The corporate authorities cannot do retroactively what they are prohibited from doing originally.

Zottman *v.* San Francisco.

A municipal corporation, acting under a charter expressing the mode in which its contracts for the improvement of its property shall be made, cannot be rendered liable for improvements made in the absence of such contract, on the ground of an implied contract to pay for benefits received. The law never implies an agreement against its own restrictions and prohibitions; it never implies an obligation to do that which it forbids the party to agree to do.

Where work is performed by one, the benefit of which is received by another, in order that the doctrine of liability upon an implied contract may be applied, there must not only be no restrictions imposed by the law upon the party sought to be charged against making in direct terms a similar contract to that which is implied, but the party must also be in a situation where he is entirely free to elect whether he will or will not accept the work, and where such election will or may influence the conduct of the other party with reference to the work itself.

The mere *retention and use* of the benefit resulting from the work, where no such power or freedom of election exists, or where the election cannot influence the conduct of the other party with reference to the work performed, does not constitute such evidence of acceptance that the law will imply therefrom a promise of payment.

The cases of *The San Francisco Gas Co.* v. *The City of San Francisco,* (9 Cal. 453) and *Argenti* v. *The City of San Francisco,* (16 Id. 255) commented upon, and shown not to be authority upon any question arising in the case at bar.

APPEAL from the Fourth Judicial District.

The facts of the case are sufficiently stated in the opinion of the Court.

*Waller & Moore,* for Appellant, cited *San Francisco Gas Co.* v. *The City of San Francisco,* 9 Cal. 453 ; *Brady* v. *The City of Brooklyn,* 1 Barb. Sup. Ct. R. 584 ; Story on Cont. 63–243 ; Kent's Com. 289, 91, and authorities ; Story on Agency, sec. 53, note 4, and authorities ; Id. 59, note 1, secs. 79, 82, 97.

*H. H. Haight,* for Respondent.

A municipal corporation cannot exceed the powers expressly granted. The position taken by appellant's counsel ignores this rule entirely, so far as contracting debts is concerned. A reference to adjudged cases would hardly be deemed pertinent or decisive upon a subject in relation to which no amount of adjudication could countervail the overwhelming considerations of public policy that rise in opposition to the rule contended for by the appellant. Moreover, the authorities have been so completely collated and examined in the various city cases which have come before this Court from

Zottman v. San Francisco.

time to time, that it is needless to call the attention of the Court to authorities which have been heretofore cited and discussed. The subject is one upon which authorities, if they were concurrent, ought to have less control than upon almost any other.

This Court, too, is well aware that the authorities are so conflicting that it is not easy to determine in which direction they preponderate. To quote the language of the Chief Justice, in the opinion delivered in *Argenti* v. *The City*, (16 Cal. 283) on the petition for a rehearing : " Indeed, upon the general subject of the extent of the liability of a municipal corporation, the authorities are a tangled web of contradictions, and it is difficult to assert any proposition with respect to the same, for which adjudications on both sides may not be cited. As a general rule, undoubtedly the city is only liable upon express contracts authorized by ordinance. The exceptions relate to liabilities from the use of money or other property which does not belong to her, and to liabilities springing from neglect of duties imposed by the charter, from which injuries to parties are produced. There are limitations even to these exceptions in many instances," &c.

This extract expresses precisely the condition of the adjudged cases. Courts have been led into contradictions by being swayed in one direction by considerations of public policy and the public good, and in the other by the importunity of individuals supplicating for their private interests upon plausible representations of the " consideration " or " benefit " received from them by the corporation.

The alacrity with which private individuals thrust these " considerations " and " benefits " upon municipal corporations, through unfaithful officers, and the pertinacity with which they besiege Courts to regard their alleged " equities," have led to most of the difficulties in which this subject is involved. On one side of the question is occasional individual loss, and on the other the establishment of a rule of vast benefit to the public, and one absolutely essential to prevent peculation and plunder of the public treasury.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

In May, 1854, the city of San Francisco, then a municipal cor-

poration, entered into a contract with Nutting and Zottman for the improvement of certain public grounds of the city, known as Portsmouth Square, in accordance with certain plans and specifications, the work to be performed by the contractors under the supervision of a Superintendent to be selected by the Common Council of the city, and to be completed to the satisfaction of a Special Committee to be appointed by the Common Council, by the twelfth of September, following.     A portion of the work designated in the contract consisted in the construction of an iron fence around the square. The contract was made in pursuance of an ordinance of the city, and no question is raised as to its validity.     After it was made, the Special Committee and the Superintendent appointed by the Common Council, upon examination of the plans and specifications, came to the conclusion that to render the work more durable than originally intended, there ought to be a stone base to the fence, instead of the one of wood named in the contract.     They also discovered that no provision was made for painting the iron of the fence, without which, as stated by one of the witnesses, it would have immediately rusted from the damp weather of the season, and the fence have become of little value to the city, either for ornament or use. The Superintendent and Special Committee, under these circumstances, in presence of the City Attorney, the President of the Board of Aldermen, and of different members of the Board, ordered the contractors to perform the extra work mentioned—that is, to construct a stone base in place of the one of wood, and to paint the iron of the fence—and assured them that the city would pay them therefor.     In conformity with this order the extra work was performed, the contractors furnishing the necessary materials.     And the testimony in the case shows that during its progress all the members of the Common Council must have been aware of the order to the contractors, as the work was in full view from the windows of the Council chambers, and was the subject of general conversation and approval by the members at their various sessions and elsewhere, and no opposition to it was ever expressed by any member.     One of the witnesses produced by the plaintiff states that the fence constructed was accepted by the city, and the amount of the original contract allowed ; but the record immediately adds that it

Zottman v. San Francisco.

was not shown that there was any action on the subject in either Board of the Common Council. The statement is therefore to be regarded only as an inference of the witness from the separate approval of the individual members of the Council, and not as establishing the fact of acceptance of the extra work by the corporation. If the original contract price was in truth allowed by the city, that circumstance by itself only shows a waiver of any objection to the work by reason of its deviation from the original specifications. It does not prove any acceptance or approval of the extra work as such. A separate bill for the extra work, including the materials furnished in its execution, was presented by the contractors to the Special Committee, but it does not appear from the record that the bill was ever presented to the Common Council, or was ever the subject of consideration by either Board. It is for the amount of this bill that the present action is brought, Nutting having assigned his interest in the demand to his cocontractor, the plaintiff, and the liabilities of the city of San Francisco having been cast by the Consolidation Act upon the defendants. The Court below gave judgment of nonsuit against the plaintiff, on the ground that there was no evidence of any ordinance of the Common Council of the city authorizing the extra work; and from this judgment the appeal is taken.

It is not pretended that the Superintendent or Special Committee had any authority to enter into any contract on behalf of the city. Their powers were limited to the execution of the original contract, and did not embrace the making of a new or different one. But it is contended in substance: 1st, that as the employment of the contractors to perform the extra work, which included the furnishing of the necessary materials, was known to the individual members of the Common Council, and was approved by them, an adoption and ratification of the employment by the corporation are to be presumed; and 2d, that the corporation has received the benefit of the extra work of the contractors, and is in consequence liable to them upon an implied contract. The positions of the learned counsel of the appellant are not stated in this form, but his argument is to that purport. If the positions thus stated cannot be maintained, his case must fail.

Zottman *v.* San Francisco.

1. An examination of the clauses of the charter of the city then in force, with reference to improvements and to contracts for work, will show the untenable character of the first position.    The charter was the source of all the power which could be exercised on the subject.    Looking to that instrument, we find that it vested in the Common Council the legislative.power of the city, and clothed them with exclusive authority over improvements of the city property, and prescribed the mode in which the authority should be exercised. It empowered the Council to pass " all proper and necessary laws" for such improvements, (Art. 3, sec. 13) and it required " every ordinance providing for any specific improvement " to be published after its passage by one Board, and before its transmission to the other, with the ayes and noes, in some city paper, (Art. 3, sec. 4) and it declared that " all contracts for work " should be let to the lowest bidder, after notice given through the public journals. (Art. 6, sec. 7.)    These provisions, whilst conferring authority upon the Common Council, also fixed the bounds of their action.    Beyond them they could not go, and give validity to their acts.    They could, therefore, only provide for any specific improvement of the city property by the passage of a law—that is, an ordinance for that purpose.    " Laws " and " ordinances," when applied to the acts of municipal corporations are synonymous terms, and were so used in the charter.    (Art. 3, sec. 3 )    And to apprise the public of the improvement contemplated, and thus give an opportunity to suggest objections to the same, and to prevent improvident legislation on the subject, the clause was inserted in the charter requiring the publication of the ordinance for the improvement, after its passage by one Board before its consideration by the other Board.    And even when the ordinance had become law, to prevent favoritism or fraud on the part of the Common Council or the officers of the city, the provision was added for giving the contract to the lowest bidder after due notice in the public journals.    A contract made in disregard of these stringent but wise provisions cannot be the ground of any claim against the city.    Individual members of the Common Council were not invested by the charter with any power to improve the city property, and any directions given or contracts made by them upon the subject, had the same and no greater validity than

Zottman *v.* San Francisco.

like directions given and like contracts made by any other residents of the city assuming to act for the corporation. And if individual members could not thus make any° valid contract originally, they could not by any subsequent approval or conduct impart validity to such contract. But we go further than this: the Common Council even could not by any subsequent action give validity to a contract thus made. The mode in which alone they could bind the corporation by a contract for the improvement of city property was prescribed by the charter, and no validity could be given by them to a' contract made in any other manner. The rule is general and applies to the corporate authorities of all municipal bodies; where the mode in which their power on any given subject can be exercised is prescribed by their charter, the mode must be followed. The mode in such cases constitutes the measure of the power. Thus, where authority is conferred to sell property, with a clause that the sale shall be made at public auction, the mode prescribed is essential to the validity of the sale; indeed, there is no power to sell in any other way. Aside from the mode designated, there is a want of all power on the subject. This is too obvious to require argument, and so are all the adjudications. Thus, in *Head* v. *The Providence Insurance Company,* (2 Cranch, 156) Mr. Chief Justice Marshall, in speaking of bodies which have only a legal existence, says: " The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and when it prescribes to them a mode of contracting, they must observe the mode, or *the instrument no more creates a contract than if the body had never been incorporated."* (See *McCracken* v. *The City of San Francisco,* 16 Cal. 619; *The Farmers' Loan and Trust Co.* v. *Carroll,* 5 Barb. 649; *The New York Fire Insurance Co.* v. *Ely,* 5 Conn. 568.)

As a necessary consequence flowing from these views, a contract not made in the prescribed mode cannot be affirmed and ratified in disregard of that mode by any subsequent action of the corporate authorities, and a liability be thereby fastened upon the corporation. Ratification is equivalent to a previous authority; it operates upon the contract in the same manner as though the authority to make the contract had existed originally. The power to ratify, therefore,

necessarily supposes the power to make the contract in the first instance; and the power to ratify in a given mode supposes the power to contract in the same way. Therefore, where the charter of a city authorizes a sale of city property only at public auction, a sale not thus made is from its very nature incapable of ratification, because it could not have been otherwise made originally. So where the charter authorizes a contract for work to be given only to the lowest bidder, after notice of the contemplated work in the public journals, a contract made in any other way—that is, given to any other person than such lowest bidder—cannot be subsequently affirmed. Were this not so, the corporate authorities would be able to do retroactively what they are prohibited from doing originally. We had occasion, in the case of *McCracken* v. *The City of San Francisco*, to give to this subject great consideration, and we there held that where authority to do a particular act can only be exercised in a particular form or mode, the ratification must follow such form or mode, and that a ratification can only be made when the principal possesses at the time the power to do the act ratified. The doctrines there laid down we regard of vital importance for the protection of the interests of municipal corporations, and without an adherence to them, restrictions such as were embodied in the charter of San Francisco—or at present are embodied in the Consolidation Act—upon the corporate authorities, may be practically disregarded and defeated. Since that decision was rendered, we have had our attention called to the case of *Brady* v. *The Mayor, etc., of New York*, (16 How. Pr. 432) where these doctrines are affirmed in an opinion of great force, and applied to an alleged contract for work done upon a street in the city of New York. The alleged contract in that case was made by the Street Commissioner on behalf of the city, and was for the performance of work upon the street, in accordance with certain specifications, the stipulated price to be paid upon the confirmation of an assessment for the work by the Common Council. The work was performed in accordance with the provisions of the contract, and seventy per cent. of the contract price was paid, and an assessment for the entire price was made for the work and confirmed. The amendment of 1853 to the charter of that city requires that " all work to be

done and all supplies to be furnished for the corporation, involving an expenditure of more than two hundred and fifty dollars, shall be by contract founded on sealed bids or on proposals made in compliance with public notice for the full period of ten days; and all such contracts, when given, shall be given to the lowest bidder with adequate security." In consequence of the manner in which the bids, made upon the proposals for the work, were tested, the lowest bidder could not be ascertained; it was therefore held that the contract was illegal and void. The question was then raised whether, under the circumstances, the defendants were liable for the work done. And this question was discussed by the Court in two aspects —whether they were liable to the plaintiff as upon a *quantum meruit*, because the work had been performed and accepted; and whether the Common Council had the power to waive the original defect in the plaintiff's claim, and by their action affirm his title to recover, so as to give him a right of action, notwithstanding the requirements of the charter had not been complied with. It is under similar aspects that the question of the liability of the city of San Francisco presents itself in the present case. "The corporation," said the Court, "can only act through its chosen officers and agents. If they not only may pay for work and labor actually done without a compliance with the statute requisites, but are legally bound to such payment, then no contract is necessary, and the restrictions in the statute are a dead letter. If they may dispense with a contract, then and then only can they confirm an illegal and void contract, and then also by any acceptance of the work and a confirmation of the contract by resolution, they repeal the statute *pro hac vice*. The relation which the corporation and its officers bear to the subject, the duties they owe to the public and those upon whom the burden is to fall, and the nature of the powers they possess, forbid us to concede any such force to their acts. By the charter the power is limited, and it is a familiar rule that corporations can only bind themselves by contracts they are expressly or impliedly authorized to make.

"It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the cor-

poration, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with.    If he neglect this, or choose to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated.    If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard.

" The analogy drawn from the obligation of an individual to pay for work which he accepts, although there has been no previous contract for its performance, wholly fails to reach the present case. Here, neither the officers of the corporation nor the corporation, by any of the agencies through which they act, have any power to create the obligation to pay for the work, except in the mode which is expressly prescribed in the charter ; *and the law never implies an obligation to do that which it forbids the party to agree to do.*

" And for the like reason the defendants cannot be treated as ratifying the unauthorized acts of its agents.    The difficulty lies not merely in the want of original power in the agents to make the contract, but in the want of power in the corporation itself to make the contract otherwise than in the mode prescribed by the charter. An individual having power to make a contract may ratify or affirm it, when made by one who without authority assumes to be his agent ; but if the individual have himself no such power, he can no more bind himself retroactively to its performance by affirmance or ratification than he could have done so prospectively in the first instance.    The power to ratify *ex vi termini* implies a power to have made the contract, and the power to ratify in a particular mode implies the power to have made the contract in that manner."

2. The second position of the appellant, that the corporation has received the benefit of the extra work of the contractors, and is in consequence liable to them upon an implied contract, is as untenable as his first position.    Indeed, the argument which meets the first position shows the unsoundness of the second.    If the Common Council could not by any subsequent action affirm and ratify a contract originally made in disregard of the requirements of the charter, so as to fasten a liability upon the corporation, it is difficult to perceive how the benefit, which may have resulted to the city in the improvement of her property from the performance of the un-

8

authorized and illegal contract, could create any such liability. We do not question the general doctrine, that where one receives the benefit of another's work he is bound to pay for the same, but we deny its application to a case like the present. The extra work for which the action is brought was performed without the request of the corporation; it could therefore of itself impose no obligation upon the corporation, any more than if the contractors had made any other improvements to the city property upon an unauthorized contract with individual members of the Common Council, or upon their own voluntary action independent of any such contract. The extra work having been thus performed without request, the Common Council had no authority after it was performed to agree to pay what it was reasonably worth. There is, indeed, no evidence in the record that the extra work was ever considered by either Board; but we do not rest our opinion upon the want of evidence as to the action of the Common Council on the subject, but upon their want of power. They could not, as we have already shown, from the restrictions imposed by the charter upon their powers, have made a valid contract in advance to pay the contractors the reasonable value of the extra work—the charter requiring all contracts for the improvement of the city property to be given out to the lowest bidder, and of course at a fixed price, after notice of the contemplated improvement in the public journals. What they thus had no authority to agree in advance to pay for the work, they had no authority to agree to pay after the work was completed. As in the case cited from New York, the difficulty existed in their want of power to bind the corporation for improvements of the city property, except in the mode prescribed by the charter. Outside of the prescribed mode, as we have stated, they were destitute of any power over the subject. As they had no authority to agree to such payment in express terms, the law could not imply any such agreement against the corporation. The law never implies an agreement against its own restrictions and prohibitions, or as it is expressed in the New York case, "the law never implies an obligation to do that which it forbids the party to agree to do."

To the application of the doctrine of liability upon an implied contract, where work is performed by one, the benefit of which is

received by another, there must not only be no restrictions imposed by the law upon the party sought to be charged against making in direct terms a similar contract to that which is implied; but the party must also be in a situation where he is entirely free to elect whether he will or will not accept of the work, and where such election will or may influence the conduct of the other party with reference to the work itself. The mere *retention and use* of the benefit resulting from the work—where no such power or freedom of election exists, or where the election cannot influence the conduct of the other party with reference to the work performed, does not constitute such evidence of acceptance that the law will imply therefrom a promise of payment. Thus, if one person should erect a cottage or stable upon the land of another without request, the conduct of the architect could not be affected by a refusal of the owner of the land to accept the building. The architect could not, upon such refusal, remove the building, it having become attached to and a part of the freehold; nor would the owner of the land be deemed to have accepted the building merely because he had not chosen to tear it down, or had seen fit to use it in connection with his land. From the necessity of the case, the owner receives the benefit of the building by reason of his right in the soil, and not from any supposed acceptance, without subjecting himself to any obligation of payment. So, too, in the present case, from necessity the corporation received the benefit of the stone base to the iron fence around Portsmouth Square, and of the painting of the iron fence, without incurring any liability therefor. It never ordered the work or the painting. These were done without its request or authority. A declaration by resolution that it did not accept of the same, could not of itself have affected the conduct of the contractors. They could not have interfered with either base or paint if such declaration had been made. Nor was the corporation bound to remove the base and paint to avoid liability. So, too, where work is done upon the streets of the city without authority—liability does not follow because the streets may be improved thereby, or their use, as previously, may be continued. Such continued use constitutes no such evidence of acceptance as to create a liability against the corporation. (*Bartholomew* v. *Jackson*, 20 Johns. 28;

*Ellis* v. *Hamlin,* 3 Taunt. 52; *Smith* v. *Brady,* 17 N. Y. 173.)

The cases cited by the appellant from the decisions of this Court —*The San Francisco Gas Co.* v. *The City of San Francisco,* (9 Cal. 453) and *Argenti* v. *The City of San Francisco,* (16 Cal. 255)—do not support his positions.   In the first case the decision was placed upon the pleadings, and is not authority upon any question arising in the case at bar.   One of the Justices did, it is true, discuss the case on its merits, and there are some expressions in his opinion which may be open to observation.   The case on its merits was, indeed, a very strong one, and the decision might perhaps be supported upon the ground that the property of the plaintiff was appropriated to the necessary purposes of the city.   It is unnecessary, however, to express any opinion upon this point, as the case itself is authority only upon a question of pleading.   In the second case, the Justices who pronounced the judgment concurred only in the conclusion.   They differed entirely in the grounds upon which they rested the liability of the city; one of them holding that a municipal corporation could only act in the cases and in the mode prescribed by its charter, and that for street improvements of a local nature express contracts authorized by ordinance were necessary to create a liability; and that the doctrine of liability, as upon implied contracts, had no application to cases of that character.   (16 Cal. 282.) It is sufficient, however, to observe that, in consequence of the disagreement of the Justices in their views, the decision is not authority upon any question presented in the present case.   Judgment affirmed.

Cope, J. delivered the following opinion:

I am of opinion, notwithstanding the position taken by me in *Argenti* v. *The City of San Francisco,* that the views expressed by the Chief Justice upon the questions involved in this case are correct.   The ground assumed in the case of Argenti was not essential to the determination of that case, and upon further reflection, I am convinced of the error of the reasoning upon which my conclusions were arrived at.   The error arose from paying too little attention to the restrictive provisions of the charter; and I am satisfied that under these provisions no obligation was imposed upon

the city by the transactions in question in this suit.   The mode of contracting was prescribed by the charter, and the provisions upon the subject were of such a character as to operate necessarily as a limitation upon the power of the city to contract in any other form. The fact that the city has received a benefit is not sufficient to create a liability on her part; for no responsibility can result as a matter of implication where the law itself negatives the idea of its existence.   It seems to be settled, that where a charter of incorporation prescribes the mode in which the contracts of the corporation are to be made, such mode must be strictly pursued or the corporation will not be bound.   Individual members of a corporation have no authority to bind the corporate body, nor can a corporate engagement be implied from conduct or declarations unauthorized by the corporation, or inconsistent with the charter.   Corporations cannot be bound except by corporate acts, and it is only from such acts, done either by the corporation as a body, or by its authorized agents, that any implication can be made, binding it in law; and no act contravening the provisions of the charter can be considered valid as a corporate act.   There is no doubt of the application of this doctrine, and in the absence of a contract deriving its validity from the charter, the conclusion that the city is not liable appears to me to be irresistible.   The rule that corporations must act in the prescribed mode, applies with peculiar force to a corporation organized for a public purpose.

I concur in the views and conclusions of the Chief Justice.