### SLUDER v. CITY OF SAN ANTONIO.*
(No. 7255.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 28, 1925. Rehearing Denied Feb. 25, 1925.)

**1. Municipal corporations ☞214(4)—Municipality held not liable for services of attorney employed in violation of charter.**

City of San Antonio was not liable for legal services rendered by an attorney employed by mayor, who with commissioners accepted such services, knowing of employment in view of charter provisions, § 20, that no contract made or money expended except by ordinance and section 40, that any debt contracted by any officer, payment of which has not been provided by ordinance, shall be void.

**2. Municipal corporations ☞226—Charter requirements as to contracts mandatory.**

San Antonio Charter, §§ 20 and 40, providing that no contract shall be authorized or money expended except by ordinance, and that any debt contracted by any city officer not authorized by ordinance shall be void, are mandatory.

**3. Municipal corporations ☞214(3)—Attorney rendering services charged with notice of charter.**

Attorney rendering services to city was charged by law with notice of charter provisions relieving municipality of liability for payment therefor, whether he had actual notice or not.

**4. Municipal corporations ☞214(3)—Municipality held not estopped to deny liability for services of attorney.**

Municipality was not estopped to deny liability for services rendered it by an attorney under unauthorized employment by mayor, where he had full knowledge that municipality was not liable for payment by reason of charter provisions.

**5. Municipal corporations ☞220(1)—Futility of services of attorney would not prevent recovery therefor.**

Futility of services rendered municipality by attorney would not prevent recovery therefor, if authorized under valid contract, where he was not responsible for events rendering such services futile.

**6. Municipal corporations ☞220(1)—Unauthorized payment for attorney's services held not to estop city from recovering payment.**

Where services were rendered by attorney to municipality under an invalid contract, unauthorized act of mayor and auditor in paying for part of services out of city's funds would not estop city from recovering sum paid.

On Motion for Rehearing.

**7. Municipal corporations ☞220(1)—Municipality entitled to recover payment for attorney's services though made after voting down ordinance for payment.**

Where services were rendered by attorney to municipality under invalid contract with mayor, municipality was entitled to recover payment made therefor, whether made before or after voting down ordinance for payment.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by J. T. Sluder against the City of San Antonio. Judgment for defendant, and plaintiff appeals. Affirmed.

Marcus W. Davis, John H. Bickett, Jr., and George G. Clifton, all of San Antonio, for appellant.

Joseph Ryan, T. D. Cobbs, Jr., and W. B. Halbig, all of San Antonio, for appellee.

SMITH, J. It appears from the record that in the spring of 1922 Judge J. T. Sluder, an attorney at law, was engaged by Hon. O. B. Black, then mayor of the city of San Antonio, to prepare all such ordinances, contracts, and other papers as were necessary, and to advise and counsel with the city authorities in certain projects originated by Mr. Black in the progress of his administration as mayor. The particular projects were, first, the proposed acquisition by the city of' a municipal gas plant; second, a proposed election to authorize the issuance of bonds with which to supplement an existing fund for building a municipal auditorium; and, third, a proposed election ·at which certain charter amendments were to be submitted to the voters of the city for adoption or rejection. There was evidence sufficient to show, and the trial court in effect found as a fact, that the appellant performed the services contemplated in his understanding with the mayor, and there was also evidence sufficient to show that these ' services were reasonably worth the amounts demanded therefor by appellant, to wit, in the municipal gas plant project, $1,500, in the municipal auditorium matter, $250, and in the charter amendment plan, $1,500. It was contended by appellant that his services in these matters were rendered' with the full knowledge, consent, and ac-

quiescence of all the members of the board of city commissioners, as well as the mayor, but upon this point there was a conflict in the testimony, at least as to the knowledge and acquiescence of some of the commissioners, and the trial court made no finding upon the issue, apparently regarding it as immaterial in the view he took of the law of the case. The trial court denied·any recovery to Judge Sluder, who has appealed.

The city of San Antonio bases its denial of liability upon the provisions of sections 20 and 40 of its charter, which, in so far as applicable here, are as follows:

"Section 20. The board of commissioners, or a majority thereof, may act by resolution in all cases except where an ordinance is by this act required: Provided, that no contract on the part of the city shall be made or authorized, nor any money appropriated from the funds of the city, * * * otherwise than by ordinance."

"Section 40. Any debt hereafter contracted by any officer of the city, or by any person on account of the city, the payment of which has not been previously provided for by ordinance duly adopted by the city council, shall be absolutely null and void and uncollectible at law or in equity, and it shall be the duty of the city attorney to plead this statute to defeat the collection or enforcement of any such claim or debt."

Appellant admitted that he performed the services mentioned with full knowledge of these provisions of the city 'charter. Upon this point he testified, on cross-examination:

"At the time I was called into conference by Mayor Black, as testified above, to advise him with reference to various matters, I was not, on the day I went over there first, familiar with section 20 of the charter of the city of San Antonio, because I had had no occasion to investigate it. I am familiar with it now. I think I was familiar with it the next day after I was summoned over there. As to whether I knew that the contract of employment that I am here suing on, or alleged in my petition, could not be made except by ordinance, I will state no; I did not know that, and I do. not think it is the law yet. I knew the law, and I knew that it was not all in the charter. The day after I was called over there I knew that that provision, section 20, was in the charter. I called the city attorney's attention to it and the mayor's attention to it. I was familiar with section 40 of the charter shortly after I was called over. I was not familiar with it when I first went over there. I did not know that section 40 was a part of the charter at the time the mayor called me into conference, but subsequent to that I did. I am familiar with all of those provisions that you have read, and was familiar with them shortly after I was conferred with. * * *"

And on redirect examination he testified:

"As to my testimony on cross-examination about calling the mayor's attention to sections 20 and 40 of the city charter, my recollection is that the mayor and city attorney were in my office when I think I stated that the charter forbade the payment of debts unless they were authorized in the manner specified in the charter. .Then Mr. Ridgeway [the city attorney] spoke up and said, 'We have our way of handling that; we never undertake to defeat any claims against the city; we do not defeat anybody's rights by reason of those provisions.' He said, 'We will handle that.' As to whether he made any statements then as to the payment of my fee, he said, 'We will attend to the fee question.' And I felt then like I felt all the balance of the time that I was doing the work, that I would trust the men, and so I did not press the question. I did not say anything about it, but simply left it to the parties handling it."

It is conceded by appellant that no ordinance or resolution or other official expression was ever adopted by the board of city commissioners authorizing his employment in any of the matters in which he rendered the services mentioned, or authorizing the appropriation of any of the funds of the city to him as compensation for his services. The record shows no ordinance was ever proposed authorizing such employment, whereas an ordinance authorizing payment for such services was offered and affirmatively voted down by the board of commissioners.

[1, 2] It is contended by appellant, however, that he is entitled to the compensation demanded, notwithstanding the provisions of sections 20 and 40, and the total failure to comply therewith. He concedes that he cannot recover as upon an express contract, since none was made in compliance with the charter provisions. But he contends that, as the mayor employed him and he performed the services thereunder, a contract will be implied, and that, as the mayor and individual commissioners accepted his services knowing of such employment, they thereby ratified and confirmed the implied contract, and the city is estopped to deny liability for the reasonable value of the services so rendered. Upon this theory alone appellant bases his claim for recovery, and therefore, according to our view, the appeal presents the one bald question of whether or not the plain and obviously mandatory provisions of sections 20 and 40 may be entirely disregarded by the mayor and commissioners in making contracts in .behalf of the city, and in obligating the city to pay out the public funds.

We think the contention needs only to be stated to be refuted. The provisions of sections 20 and 40 of the charter are plain, positive, and direct; they are obviously mandatory in both letter and spirit. They erect an insuperable barrier against the secret exercise of official power by public officials to make contracts in behalf of the city, and restrict the exercise of that power to the board of commissioners acting as a body, in open session, by ordinance enacted in the formal manner prescribed by the organic law

of the city. Except in that formal manner the mayor and commissioners and all other officials have no more power than has the humblest private citizen to bind the city; since the charter in express terms strips them of all power to contract in behalf of the city or incur debts against it in any other way. Foster v. City of Waco (Tex. Sup.) 255 S. W. 1105; McQuillan Mun. Corp. § 1179. The purpose of the quoted provisions is as obvious as it is wise and wholesome. That purpose is to require that all contracts, particularly those involving the expenditure of the public funds, be authorized and consummated only in the open, so that the public would be apprized of the transaction. It was designed to prevent undercover agreements and contracts whereby the public funds would be secretly appropriated.

It is conceded by appellant that he could not recover upon an express contract made in the manner alleged. But he contends that, because the mayor privately engaged his services, and the individual commissioners, knowing of the employment, ratified and confirmed it by accepting those services and the benefits derived therefrom, a contract in behalf of the city will be implied and enforced. But this position is obviously untenable. For if such were the rule the mayor, or any other city official or agent as for that matter, with, and perhaps without, the acquiescence of the individual commissioners, could resort to this method of making all contracts in behalf of the city, and in this way completely nullify the charter provisions. The charter expressly provides that:

"*No* contract on the part of the city shall be made *or authorized*, nor any money appropriated from the funds of the city, *otherwise than by ordinance.*" Section 20.

Shall it be held that the law will *imply* an obligation to do that which it so positively forbids the parties to *agree* to do? Again it is provided (section 40) in plain and unmistakable terms that:

"Any debt hereafter contracted by *any officer* of the city, or by *any person on account of the city*, the payment of which has not been previously provided for *by ordinance duly adopted by the city council*, shall be *absolutely null and void and uncollectible at law or in equity.*"

Shall it be held that any secret, unofficial, or informal agreement by individual city officials shall be enforced against the city as an implied contract in its behalf in the face of such positive prohibition thereof by its organic law? We think the proposition is without any merit, and accordingly overrule it. Dillon Mun. Corp. (5th Ed.) §§ 794, 795; McQuillan Mun. Corp. §§ 1164, 1177, et seq., 1256, 1262; City of Bryan v. Page, 51 Tex. 532, 32 Am. Rep. 637; Nichols v. State (Tex. Civ. App.) 32 S. W. 454. Squarely in point,

269 S.W.—30

unmistakable in effect, and forceful in its application is the language of our Supreme Court in Bryan v. Page, a case almost precisely in point:

"We are of opinion that neither the mayor nor the common council were authorized to bind the city by contract for legal counsel for their assistance; no ordinance having been passed in relation to such employment.

"The charter gave the power to employ legal counsel, but prescribed that the power be exercised by, or at all events in accordance with, an ordinance of the common council. The charter—the source of all the power of the mayor or council over the subject—having limited the mode of its exercise, they could not in a different mode make a valid contract; nor could they by any subsequent approval or conduct impart validity to such contract. As without an ordinance they were without power to bind the city by an express contract to pay for legal services, the law would not imply any such contract against the city. 'The law never implies an obligation to do that which it forbids the party to agree to do.' Brady v. Mayor of New York, 16 How. Pr. 432, as cited in Zottman v. San Francisco, 20 Cal. 105.

"If municipal corporations can be held liable on an implied contract where the charter has withheld the authority to make an express contract, it is easy to evade and render useless such restrictions in their charters. The claim of plaintiffs, that the city of Bryan was bound to pay them because of their employment by the mayor and because of the use made of their opinion by the common council, cannot be maintained. They were bound to know of the limitations on the authority of these officials, and their services were rendered at their own hazard. Zottman v. San Francisco, 20 Cal. 105; Bladen v. Philadelphia, 60 Penn. St. 464; City of Leavenworth v. Rankin, 2 Kan. 357; 1 Dill. on Mun. Corp. § 373."

Appellant's contentions have been ably and earnestly presented in this court, and are entitled to and have received painstaking consideration. Appellant has also cited numerous authorities as supporting his case, of which the case of City of San Antonio v. French, 80 Tex. 576, 16 S. W. 440, 26 Am. St. Rep. 763, appears to be the leader. We do not regard those authorities as applicable to the case made here, however, for, besides various other distinguishing characteristics in all of them, none of these decisions were tested by charter provisions similar in letter or effect to the mandatory or prohibitory provisions of sections 20 and 40 of the charter of the city of San Antonio.

[3] We think the circumstances under which appellant entered into the agreement he now relies upon emphasizes the justice and necessity of applying and enforcing the doctrine we have announced. It will be observed from the testimony of appellant which has been set out that, at the inception of his negotiations with the mayor and city attorney looking to his employment, he was fully aware of the provisions of the charter now invoked against him by the city; although

as for that matter he was charged by law with notice thereof, whether he had actual notice or not. It should be said to the credit of his good faith that he himself called the attention of the mayor and city attorney to these particular provisions, whereupon he was assured by them in effect that they would see that he was compensated for his contemplated services, notwithstanding and in spite of those provisions. This assurance was given him, not by ordinance duly enacted by the board of commissioners in open session in the council chamber, but in what appears to have been a private conference held between the two officials and appellant in the latter's private office. Lulled into apparent security, appellant acquiesced in, seemed to be satisfied with, and undoubtedly relied upon, this assurance, and he and the mayor thereafter proceeded upon the understanding that appellant would look, not to the law as written in the city charter, but to a direct evasion of that law, for compensation for his services. Is it not obvious that the charter provisions were designed to circumvent and nullify just such agreements when thus privately arrived at, in so far as the city was intended, by the parties, to be bound thereby?

[4] We think, moreover, that the incident here discussed effectually serves to defeat appellant's plea of estoppel against the city, for, conceding his good faith, appellant nevertheless proceeded into the venture with full knowledge that under the law (section 20) such contract shall not be "made or authorized" in that manner, that under the law (section 40) any debt contracted in such manner "by any officer of the city or by any person on account of the city shall be absolutely null and void and uncollectible at law or in equity," and that under his oath of office one of the very officials with whom he made the agreement, the city attorney, was required "to plead this statute (section 40) to defeat the collection or enforcement of any such claim or debt." In the language of the Supreme Court, paraphrased, appellant "was bound to know of the limitations on the authority of these officials, and his services were rendered at his own hazard." City of Bryan v. Page, supra.

It should be said here with emphasis that there is nothing in the record tending in any degree to reflect upon the personal, professional, or official integrity of the gentlemen making the agreement in question, nor do the circumstances as disclosed by the record warrant any inference that those gentlemen were prompted by improper motives in making that agreement. As for that, "gentlemen's agreements" of this nature constitute the highest and most binding form of obligations between men, and appellant would be entitled to exact the last pound of flesh accruing to him under the terms of this particular agreement, had his adversaries been acting for themselves as individuals, or with authority for others. But it would be preposterous to say that the city of San Antonio could be bound by that character of agreement, even if it had been approved and acquiesced in, individually, by every official of the city; for, as we have said, there is only one mode of binding the city by contract, and that mode is clearly prescribed, while every other mode is expressly prohibited, by the plain and mandatory provisions of sections 20 and 40 of the charter, as we have endeavored to show.

[5] The record shows that neither of the projects in connection with which appellant performed the services in question were ever consummated; that the mayor's project for acquiring a municipal gas plant was finally vetoed by the board of commissioners; his plan for issuing bonds for a municipal auditorium was defeated by the people at the polls; and the proposed election to amend the charter was never held. Counsel for the city contend that the total failure of these projects rendered appellant's legal services futile, and for that reason appellant was not entitled to recover. We do not think this position is sound. Appellant was not responsible for the events rendering his services fruitless, and, had those services been rendered in pursuance of a valid contract, his right to recover would not have depended upon the later events which he could not control.

[6] It appears from the record that, after the board of commissioners had voted down an ordinance providing for the payment of appellant's claim, the city auditor, on instructions given by the mayor in response to an opinion of the then city attorney that it would be lawful, issued a voucher to appellant for the item of $1,500 as compensation for his services in connection with the proposal to hold an election for the submission of certain charter amendments, which election, it should be repeated, was never held. The voucher was paid out of the city's funds, but, as soon as the fact became known to the board of commissioners, that body repudiated the act of payment and directed the city attorney to institute suit to recover the amount, which was done by way of cross-action filed in this suit instituted by appellant to recover the other two items in his account. The trial court rendered judgment in favor of the city on this cross-action, and appellant is complaining thereat in this appeal. We are of the opinion that what has been said on the main branch of the appeal is applicable to the question here raised, and that the city was in no manner obligated to appellant in the transaction. The unauthorized act of the mayor and auditor in paying this item out of the city's funds could not bind the city or estop it from recovering the

sum paid, and the trial court correctly rendered judgment allowing such recovery.

The judgment is affirmed.

### On Motion for Rehearing.

It is stated in the original opinion that the payment of $1,500 was made to Judge Sluder after the board of commissioners had voted down an ordinance providing for such payment. This finding of fact is challenged by appellant on motion for rehearing. It appears that the oral testimony in the case is that the ordinance was in fact voted down before the payment was made, and the case seems to have been briefed upon that theory. The record shows the payment was made on February 26, 1923. The minutes of the council show the ordinance was voted on and defeated on March 5th. The oral testimony, undisputed, is that the ordinance repudiating the payment and directing the city attorney to institute suit to recover from appellee the amount so paid him was adopted at the next meeting of the council following the payment. The record shows the repudiating ordinance was passed on March 5th, and it was recited in said ordinance that the payment was made after the ordinance authorizing it had been defeated. In this state of the record, and in the absence of an express finding thereon, we think we are required to resolve the issue against appellant and in support of the right action of the trial court.

[7] In our view of the law of the case, however, it is proper to add that in our opinion the fact is immaterial to the decision rendered.

Appellant's motion for rehearing is overruled.