## Koch and another, Appellants, vs. The City of Milwaukee and others, Respondents.

*December 17, 1894 — January 8, 1895.*

*Municipal corporations: Milwaukee: Powers of common council and board of public works: Erection of library and museum building: Procuring plans, etc.: Ratification.*

By the charter of Milwaukee the general powers of the city government are vested in the common council; and by the statutes relating to the public library (Laws of 1878, ch. 7) and the public museum (Laws of 1882, ch. 328) no building could be erected for either of those institutions without an ordinance or resolution of the common council. By ch. 93, Laws of 1891, the city was authorized to issue bonds for the erection of a public library and museum building, and it was provided that "the board of public works shall have power and authority, *by and under the direction of the common council,* to enter into contract or contracts for doing *all the work* of erecting and constructing" the building, and to appropriate out of the funds realized from the sale of the bonds "such sum or sums as may become necessary and required for defraying the cost of the erection of said building," etc.; and by ch. 311, Laws of 1893, further power was conferred on the common council to issue bonds for the erection of such building, etc. Under the charter the board of public works was "an executive department," having no power to initiate the erection or construction of public buildings. *Held,* that the common council had original power to erect and construct said library and museum building and, as incident thereto, to procure plans and specifications therefor. It had therefore the right to adopt and ratify the acts of the trustees of the library and museum in procuring such plans and specifications, and to appropriate money from the proper fund to pay the expenses thereof. *Dullanty v. Vaughn,* 77 Wis. 38, and *Trester v. Sheboygan,* 87 Wis. 496, distinguished.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

The complaint charges that divers persons therein named as defendants, constituting the library board and the museum board of the city of *Milwaukee*, acting as a joint body and not as separate boards, advertised for plans and specifications for a building to be constructed for the use of the public library and the public museum of the city of *Milwaukee*, without any resolution having been passed by the common council providing for the erection of such building, and it was insisted that such joint action of the boards was not in law the action of either, but was merely the action of the individual members of the two boards and had no binding force or efficacy whatever; that in response to the advertisements some seventy or eighty distinct sets of plans and specifications were submitted, and pursuant to the terms of advertisement five of these sets of plans were selected, with the aid of an expert architect employed for that purpose, as the five best sets, and among the sets thus selected were those of the plaintiffs and those of the defendants *Ferry & Clas;* that the members of said boards, still acting jointly, selected from these five sets the plans and specifications of *Ferry & Clas* as *the* plans and specifications according to which the building was to be constructed, and undertook to appoint them as architects and superintendents of it; and it is charged upon information and belief that the selection of the *Ferry & Clas* plans and specifications was collusive and corrupt.

The plaintiffs sued in their capacity as citizens, electors, and tax-payers of the city, as well as on behalf of other electors and tax-payers thereof. It is alleged in the complaint that the persons submitting plans and specifications known as first, second, third, fourth, and fifth best were to have each $500 for the same, and that the said *Ferry & Clas* were, in addition to $500, to have percentages on the

cost of construction of the building, as superintendents, at the rates therein stated; that plaintiffs submitted plans and specifications included within the five best, but they were not adopted; that the amount of money promised to be paid by the said joint board to the said expert for examining said plans and for the said five best plans, which included those adopted, and the percentage for superintending the building, would amount to upwards of $12,000, to be summarily disbursed out of the fund in the hands of the city treasurer belonging either to the public library or public museum fund, and to be disbursed on orders of the president and secretary of the board of trustees, respectively, countersigned by the city comptroller, out of funds then in the hands of the city treasurer.

Upon this complaint an injunction was issued, restraining the members of the boards of trustees of the public library and public museum from taking any further steps or doing any act towards carrying into execution their purpose in selecting plans and specifications for a public library and museum building, and from adopting any of the plans and specifications submitted to them, either as a joint board or as individual members of either of the boards, and restraining the city of *Milwaukee*, its treasurer, comptroller, common council, and other officers from paying any obligations incurred by said joint board on account of plans and specifications so solicited by them for said building, and from paying any person who might have acted as an expert in examining the plans for his services as such; and said city and its common council and all other officers thereof were forbidden to pass any resolution or take any action having for its purpose to validate, directly or indirectly, the proceedings, acts, or doings of the said joint board in respect to the matters aforesaid; and the defendants *Ferry & Clas* were forbidden to do any act or take any steps whatever towards the construction of the said building, and from using any of the

designs, plans, or ideas embodied in the plans and specifications submitted by the plaintiffs, and from making any contract for the construction of the building. A motion was made to dissolve the injunction, but it was modified so as to restrain the city of *Milwaukee*, its common council, comptroller, and treasurer from auditing, allowing, or paying, in whole or in part, any obligation incurred or attempted to be incurred by said joint board or by the several boards of trustees of said museum and library on account of the plans and specifications mentioned in the complaint, or on account of the services of the expert architect, upon the order of said boards, or either of them, or any of the officers of said boards; and in all other respects the injunction was dissolved.

Subsequently the trustees of the public library and of the public museum transmitted to the common council the five sets of plans and specifications mentioned, and recommended the adoption of the plans and specifications of *Ferry & Clas*, and accompanied the same by a bill of the expenses incurred in the matter of procuring plans and specifications, amounting to about $3,000, including bills for advertising, entertaining the expert, and payment of $500 for each of the five sets of plans specified, selected as the best, and some other apparently reasonable items of expense. Upon the papers on file and the affidavit of one of the plaintiffs, a motion on behalf of the plaintiffs was made for a further injunction restraining the city of *Milwaukee*, its common council, comptroller, treasurer, and all other officers or agents of the city from passing any resolution in said council towards auditing or paying any of the bills for moneys for said plans and specifications, or from paying directly or indirectly any portion thereof. The court made an order denying such application, from which the plaintiffs appealed.

For the appellants there was a brief by *N. S. Murphey* and *F. C. Eschweiler*, and oral argument by *Mr. Murphey*.

They contended, *inter alia*, that the sole power of making and entering into contracts for doing all the work of building the proposed library and museum building is vested in the board of public works, "by and under the direction of the common council." Secs. 10–12, ch. 93, Laws of 1891. The words "by and under the direction of the common council" mean that that body may determine the size, number of stories, material of construction, time of beginning, and date of completion of the building, and such general matters only. But when these things have been so determined by the council, the duty to contract for the construction of the building and, as a necessary incident thereto, to employ an architect to prepare plans and specifications for the same, is vested in the board of public works, and no other body can lawfully act. *Peterson v. New York*, 17 N. Y. 454; Dillon, Mun. Corp. § 465, note 1. The power to do these particular acts having been granted by the legislature to the board of public works, it is beyond the scope of the common council to delegate that power or any part thereof to any other branch of the city government. *Lauenstein v. Fond du Lac*, 28 Wis. 336; *Lord v. Oconto*, 47 id. 386; Beach, Pub. Corp. § 276; *Mitchell v. Wiles*, 59 Ind. 364; *People ex rel. Smith v. Flagg*, 17 N. Y. 584; *Brady v. New York*, 20 id. 312. The legislature has in this case distinctly and directly prescribed by whom the contracts shall be made for doing this work, and in a special manner and independently of the methods prescribed for the usual city buildings; and the method so prescribed must be strictly followed. The provision is mandatory, and the common council can no more delegate the power of obtaining plans and letting contracts than they could proceed to erect an almshouse or city hospital, using the funds provided in the special law in question. *Farmers' L. & T. Co. v. Carroll*, 5 Barb. 649; *Smith v. Newburgh*, 77 N. Y. 130; Beach, Pub. Corp. § 698; *Dickinson v. Poughkeepsie*, 75 N. Y. 65; *Reilly v. Phila-*

*delphia,* 60 Pa. St. 467; *Stockton v. Creanor,* 45 Cal. 643. The common council, having no power to contract or solicit plans, cannot in any manner ratify what has been done by the joint board. *Dullanty v. Vaughn,* 77 Wis. 38; *Veeder v. Lima,* 19 id. 280; *Brady v. New York,* 20 N. Y. 312; *Lyddy v. Long Island City,* 104 id. 218; *Durango v. Pennington,* 8 Colo. 257; *Horton v. Thompson,* 71 N. Y. 513; *Hodges v. Buffalo,* 2 Denio, 110; *Zottman v. San Francisco,* 20 Cal. 96; *Hague v. Philadelphia,* 48 Pa. St. 527; *Highway Comm'rs v. Van Dusan,* 40 Mich. 429; *McDonald v. New York,* 68 N. Y. 23; *People ex rel. Coughlin v. Gleason,* 121 id. 631; *Gates v. Hancock,* 45 N. H. 528. When the charter or a statute has committed a class of acts to particular officers or agents other than the general governing body, the proper functionaries must act and the designations must be observed, and generally no act of recognition can supply a defect in these respects. *Peterson v. New York,* 17 N. Y. 454; *Trester v. Sheboygan,* 87 Wis. 496; *Clark v. Janesville,* 13 id. 414; *Dullanty v. Vaughn,* 77 id. 38.

*C. H. Hamilton,* city attorney, for the respondent city.

For the respondents *Ferry* and *Clas* there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *J. G. Flanders.*

*Conrad Krez,* for the other respondents.

PINNEY, J. The point decisive of this appeal is whether, after the five sets of plans and specifications mentioned had been procured for the library-museum building by the members of the library board of trustees and the museum board of trustees, acting jointly, though without any lawful authority, and had been reported to the common council, that body could adopt their acts in procuring the same, and provide for the payment of the costs and expenses thereof, and direct the making of a contract by the board of public works for the erection and construction of such building ac-

cording to the plans of the defendants *Ferry & Clas*, and
give them the superintendency of its erection.

The public library of the city of *Milwaukee* is a branch
of its educational department, to be maintained by the city
by and with the "library fund," raised by general taxation
and received and paid out by the city treasurer in the man-
ner specified by its charter. The library is under the con-
trol and management of the board of trustees of the public
library, the powers and duties of which are defined by law.
It is evidently a subordinate bureau or department of the
city government, and while it has power to erect, purchase,
hire, or lease buildings, rooms, etc., no lot or building could
be purchased, leased, or erected for the purpose mentioned
"without an ordinance or resolution of the common council
of the said city," and deeds of conveyance and leases there-
for are to run to the city, and orders for the payment out
of the library fund are required to be countersigned by the
city comptroller. Ch. 7, Laws of 1878. The public museum
of the city has substantially the same relation to the city
government as the public library, and is supported in the
same manner, and the powers and duties of its board of
trustees are substantially like those of the board of trustees
of the public library. Laws of 1882, ch. 328.

By ch. 93, Laws of 1891, an issue of bonds by the city of
*Milwaukee* was authorized for the erection of the public
library and museum building, and it was provided by sec. 10
of the act that: "The board of public works shall have
power and authority, *by and under the direction of the com-
mon council,* to enter into contract or contracts for doing
*all the work* of erecting and constructing the library and
museum building," and to appropriate out of the funds real-
ized from the sale of the bonds "such sum or sums of money
as may become necessary and required for defraying the
cost for the erection of said building," not exceeding, etc.;
and it appears that by ch. 311, Laws of 1893, further power

was conferred on the common council to issue bonds "for the erection and construction of library and museum buildings, and the purchase of sites for the same." The argument in support of the injunction was that the power to contract for the erection and construction of the library and museum building was vested solely in the board of public works, and the common council had no discretion or control in reference thereto, and could only set the board of public works in motion, leaving the substantive conditions and provisions of the contract entirely to the discretion and judgment of the board of public works, and that as the common council had no other authority, it was not competent for it to ratify the acts of the members of the boards of trustees of the library and of the museum in securing the plans and specifications in question, and to appropriate from the proper funds the cost and expenses of obtaining them.

The statutes relating to the public library and public museum show clearly that full control is vested in the common council to determine the character, kind of buildings, and the time of their erection for these city institutions. They were to be paid for by the exercise of the power of taxation vested in the common council, and could not be erected without a previous ordinance or resolution of the common council. Laws of 1878, ch. 7, secs. 10, 11; Laws of 1882, ch. 328, secs. 10, 11. The general powers of the city government are vested in the common council, with special delegations of power to particular subordinate officers and subordinate agencies or bodies, for the better and more convenient administration of the city affairs. Laws of 1874, ch. 184, subch. 2, sec. 1, and subch. 4, sec. 1. There was established by the charter for the city "an *executive* department, to be known as the board of public works," with certain limited powers. Id., subch. 5, sec. 1. It could not initiate the erection or construction of public buildings or improvements. It could act only after this work or improvement

had been ordered by the council. Id., subch. 5, sec. 9. And sec. 10, ch. 93, Laws of 1891, as we have seen, confers the power and authority on the board of public works to contract for doing all the work of erecting and constructing this particular building, under and when directed by the common council.

It was plainly intended that the council should have authority to procure plans and specifications for the building, to enable it to determine the kind and character of building the present and prospective necessities of the city required, in order that it might give wise and intelligent direction on the subject to the board of public works, and there can, we think, be no doubt that it had original authority, for this purpose, to procure or direct the procurement of the proper plans and specifications for the building. They were in fact procured for the use of the city in the erection of the building, and it seems to follow as a necessary consequence that, having been delivered to the common council, it had a right to ratify the acts by which they were obtained and to appropriate the money necessary to pay the costs and expenses of their procurement. A court of equity ought not, we think, to interfere by injunction to prevent a wise and discreet exercise of this power on the part of the council. A municipal corporation may ratify the unauthorized acts and contracts of its agents which are within the scope of its corporate powers, and such ratification is equivalent to previous authority.

The same principle is applicable in this respect to such corporations as to individuals, but subsequent ratification cannot make valid an act beyond the scope of corporate authority. 1 Dillon, Mun. Corp. sec. 463, and cases cited in note 1; 15 Am. & Eng. Ency. of Law, 1102, and cases cited. The case of *Mills v. Gleason*, 11 Wis. 470, is a sufficient and decisive authority on this subject. An issue of corporate bonds in the name of the city of Madison, by its so called

officers, elected before the city charter had been published and at a time when the city had no legal existence, was held validated by ratification of the same by the city after the charter had been published, the funds procured by the sale of the bonds having been used in erecting city buildings, and the common council having twice levied taxes to pay interest thereon after the city became a corporation *de jure.* In *Dullanty v. Vaughn,* 77 Wis. 38, and *Trester v. Sheboygan,* 87 Wis. 496, there was an utter absence of original authority on the part of the city in the one case, and of the town in the other, to make the contract claimed to have been ratified.

We do not overlook the contention, sustained by many well considered cases, that where the charter or a statute has committed a class of acts to particular officers or agents other than the governing body, the specified functionaries must act, and generally no act of recognition or ratification by such body can supply a want of such action. But it must be borne in mind that it had not been delegated to the board of public works to determine whether the building in question should be erected or not, nor the kind and character of the building, nor to procure plans and specifications for it, without previous authority of the council. The action of the board of public works in entering into a contract for the construction of the building is subject to and dependent upon the direction and original power of the council as the governing body of the city, and the board of public works in this respect is but a convenient subordinate executive agency to execute the powers of the common council.

We hold, therefore, that the common council had original power to erect and construct the library-museum building, and that it was fairly and indeed a necessary incident of such power, to procure plans and specifications to enable it to prudently and properly exercise it, and that it has a right to adopt and ratify the acts of those who procured the plans

and specifications for its use, and to appropriate money from the proper fund to pay the fair costs and expenses of procuring them; and, inasmuch as there is no allegation of meditated bad faith or fraud on the part of the common council, the injunction asked for was properly refused.

*By the Court.*— The order of the circuit court appealed from is affirmed.