APPLETON WATERWORKS COMPANY, Respondent, vs. CITY OF APPLETON, Appellant.

*May 21—September 24, 1907.*

*Municipal corporations: Water supply: Expiration of franchise: Continuation of service: Increased charges: Implied contract: Appeal: Reversal: Dismissal.*

1. A contract with a municipal corporation will not be implied if such implication would conflict with the statute prescribing a mode of contracting by which alone such corporation could bind itself.
2. Sec. 1780a, Stats. (1898), regulating contracts between municipal corporations and waterworks companies, and secs. 959—48, 1081, Stats. (1898), and the provisions of the Appleton city charter (Laws of 1885, ch. 441, subch. V, sec. 2) prescribing the method of raising funds required under such contract, prevent any implied contract which presupposes a general liability.
3. Where service is being rendered under a yearly contract, and a new year has been begun, neither party can by notice after such beginning change the terms of the contract for that year.
4. A municipal corporation granted to a water company the exclusive privilege of constructing and operating a system of waterworks for supplying the city and its inhabitants with water

for twenty years from November 4, 1881. The city agreed to pay for the water supplied to it an annual rental at a specified rate per hydrant, payable on the first Monday of February and of August of each year. After November 4, 1901, and until March 1, 1904, the company continued to furnish the city with water according to the terms of the original contract. On February 20, 1904, the company notified the city that beginning March 1, 1904, pending the consummation of a new contract, and as a temporary arrangement, it would furnish water only at a higher rate. The city made no reply to this notice and continued to use the water, but when the company presented its first monthly bill the same was disallowed and a sum of money appropriated equal to the original monthly rate. Similar action was taken by the city with regard to all the monthly bills from March to October, 1904, inclusive. *Held*, that no new contract was created between the parties by the notice of February 20, 1904, and the continued use by the city of the hydrants and water service after that date.

5. In reversing a judgment in this case holding defendant liable on an implied contract the supreme court does not dismiss the action, but orders judgment on an express contract between the same parties under which defendant admits a liability.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

The appeal is from a judgment against the city of *Appleton* for $8,532.54 damages and costs.

Appellant on November 4, 1881, enacted, dated, and published an ordinance granting to the Wiley Construction Company, a corporation of Connecticut, "the exclusive privilege of constructing and operating a system of waterworks within the limits of the city of *Appleton,* Wisconsin, for supplying said city and its inhabitants with water for protection against fire and for domestic purposes for and during the term of twenty years from the date of this ordinance." The foregoing grant was expressly subject to the terms, restrictions, and conditions found in the ordinance, which were very numerous. Only those bearing upon the questions herein involved will be noticed. Wholesome water from artesian wells was to be furnished for fire protection and domestic use, ex-

cept for fire use in an emergency, when other water might be supplied. The number of hydrants, the kind and size of pipe, the manner of laying the pipe, the kind and capacity of pumps, were provided for with more or less completeness of detail. The grantee was required to furnish, free of charge, water for sprinkling streets, for schoolhouses, city buildings, for drinking fountains, and to some extent for flushing gutters and sewers. Sec. 13 was as follows:

"For the use of fire hydrants the city shall pay to the said Wiley Construction Company, its successors or assigns, an annual rental as follows: For the eighty (80) first located hydrants an annual rental for each hydrant of seventy-five ($75) dollars; for the ten (10) hydrants next located an annual rental of seventy ($70) dollars is to be paid for each hydrant. For all hydrants thereafter located on new mains an annual rental of seventy ($70) dollars is to be paid for each hydrant. After there shall be ninety (90) hydrants placed upon the mains that the said eighty first located hydrants are upon, then and thereafter any and all hydrants placed upon said mains by the said city shall be supplied with water by the said company without expense to the said city; the city shall pay an annual rental upon all hydrants additional to eighty, subject to the conditions and exceptions hereinbefore provided, from and after the date at which the same shall have been placed and equipped and ready for use. Above provided for rentals shall be paid in semi-annual instalments upon the first Monday in February and August of each year, upon which days all past-due rentals shall be paid."

All breakages and repairs resulting from ordinary use were to be made good by the company. There was no time fixed during which the rental should be in force, otherwise than as may be inferred from the use of the word "annual," as above indicated, and from the limitation of the said exclusive grant to twenty years. In case of default by the company the city was authorized to assume and have charge of the waterworks system, and continue in charge and control until repaid its disbursements incurred in bringing the waterworks

to the required condition. The system was required to be constructed and ready for use before January 1, 1883. The company was also granted the exclusive right to enter upon, dig up, and lay pipe in any and all public highways, streets, lanes, alleys, and public squares, grounds, and places, subject to the control of the mayor and common council. Provisions for appraisal and purchase by the city were made; but, in case the city did not exercise its option to purchase, "then said city shall give the said company, its successors or assigns, an equal right with any and all other persons for a renewal and grant of all the rights and privileges and franchises herein granted which shall be necessary for the establishing and operating a complete system of waterworks in said city of *Appleton*." The power of the city to grant the right to others or itself construct a system of waterworks not to be operated prior to the expiration of the said franchises is recognized.

"But in no instance shall said Wiley Construction Company, its successors and assigns, be required to remove or to determine the use of any part or portion of the said waterworks system by them constructed."

Provisions relating to the charges to be made to private consumers of water, and for the acceptance of the ordinance by the company in writing, were followed by this declaration:

"This ordinance shall be a contract by and between the city of *Appleton* and the said Wiley Construction Company, its successors and assigns, and shall be binding upon both parties thereto when said company, its successors or assigns, shall file an acceptance of the same as hereinbefore provided."

The acceptance filed was in the words following:

"The Wiley Construction Company, for itself and its successors and assigns, hereby accepts the terms and conditions of a certain ordinance passed on the 4th day of November, A. D. 1881: An ordinance to provide for and secure to the

city of *Appleton* a system of waterworks in said city which shall at any and all times furnish to said city and the citizens thereof an ample supply of artesian well water for protection against fire and domestic purposes; and in evidence thereof hereby make and execute the written acceptance and file the same as in said ordinance required.

"THE WILEY CONSTRUCTION COMPANY,
"By L. Wiley, President."

It appears by recital in the ordinance that the Wiley Construction Company was a foreign corporation, but how or under what statute organized, or what were its charter powers, does not appear. It does appear that the respondent was incorporated under the laws of the state of Wisconsin on February 29, 1892, for the purpose of operating a system of waterworks in the city of *Appleton* and for supplying said city and its inhabitants with water for protection against fire, and water for domestic and other purposes. Respondent, *Appleton Waterworks Company,* appears to claim under a deed or instrument of grant dated July 25, 1892, in which the Appleton Waterworks, a corporation of Wisconsin, is grantor and the respondent is grantee. There is no transfer in evidence from the Wiley Construction Company to either the Appleton Waterworks or the *Appleton Waterworks Company.* But it does appear that on May 21, 1890, an ordinance was enacted by the appellant recognizing the Appleton Waterworks as then furnishing water under the ordinance first mentioned of November 4, 1881, and at the same time a contract was entered into between the Appleton Waterworks and the appellant providing for the extension of pipe lines, the furnishing of nine additional hydrants and one fire hydrant, and that the city should not be required to take any additional hydrants on said extensions, and otherwise recognizing as in force the provisions of the original ordinance of 1881. After November 4, 1901, and until March 1, 1904, the respondent continued to furnish to the appellant the use of hydrants and also the free water specified in said ordi-

nance of 1881 and the ordinance and contract of 1890 at a
rental of $75 per annum per hydrant for 80 hydrants, $70
per annum per hydrant for 89 hydrants, and 76 hydrants
gratis, in all 245 hydrants for $12,230 per annum, and this
continued until February 20, 1904, when the respondent
served upon appellant notice that "pending the consummation
of a new contract, and as a temporary measure, the company
will continue until further notice to furnish water for fire
and other municipal purposes the same as now, but at a rate
of $1,500 per month, payable monthly from and after March
1, 1904." The appellant made no immediate reply to this,
but continued the use of water as theretofore, and when the
respondent presented its first monthly bill for $1,500 pursu-
ant to the notice aforesaid to the common council, as required
by appellant's charter, the council disallowed the same on
April 6, 1904, and appropriated a sum of money to pay said
bill at the old rate existing prior to said notice of February
20, 1904; and substantially the same proceedings were had
with bills for $1,500 per month presented and filed with the
appellant's common council for the months of April, 1904, to
October, 1904, inclusive. The respondent appealed from the
disallowance of these claims by eight separate appeals, which
were consolidated into one action by order of the circuit court,
and in that action the judgment appealed from was rendered
against the appellant. Taxes for the year 1904 due from the
respondent, amounting to $4,942.08, were by stipulation al-
lowed as an offset. The respondent claimed in the court be-
low, and claims in this court, (a) that the acceptance by the
appellant of respondent's water service after receipt of the
notice of February 20, 1904, created a contract to pay $1,500
per month therefor; (b) that, if this is not correct, respondent
was entitled to recover *quantum meruit;* (c) that the amount
the respondent deserves to recover may be established by
computing a reasonable rate of interest upon the value of the
property employed in rendition of the services. The trial

court held against the respondent on proposition (a) and with the respondent on propositions (b) and (c). The appellant assigns error, and contends that the court below erred in its mode of arriving at the amount the respondent deserves to recover, and that the contract contained in the ordinance of 1881 continued in force and governs the amount of recovery. The appellant recognized the respondent as the successor of the Wiley Construction Company, and entered into an appraisal for the purpose of purchasing from the respondent, but after appraisal made did not purchase.

*Geo. G. Greene* and *John Bottensek,* of counsel, for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *George Lines,* of counsel, and oral argument by *Mr. Lines.*

TIMLIN, J. No question of the power of a municipal corporation to grant an exclusive franchise, no question of the right of the Wiley Construction Company to take a franchise under ch. 211, Laws of 1879, or sec. 1780*a,* Stats. (1898), no question relative to the right or power of a city to make its consent to the use of its streets conditional upon the concession or continuance of pecuniary advantages to it or to its citizens, and no question of the correctness of the method employed by the court below in arriving at the amount of recovery, necessarily arises in this case; therefore neither of said questions will be considered or decided.

The city contracted with the Wiley Construction Company and its successors and assigns to pay annually a specified hydrant rental, and the construction company, its successors and assigns, in and by the same instrument undertook to furnish the hydrants and the water, which undertaking included pipes and all other necessary appliances, and it also undertook to furnish free water for sprinkling streets, for schoolhouses, city buildings, drinking fountains, etc. These obli-

gations are contractual and mutual. One undertaking constituted the consideration for the other.

"In dealing with this . . . contract, the parties stand purely and simply as contractors, governed by the same rules of law which govern private contractors, except so far as the known situation of each may control the interpretation of their mutual promises." *Kaukauna E. L. Co. v. Kaukauna*, 114 Wis. 327, 89 N. W. 542.

Respondent is the successor and grantee of the construction company, and it is quite immaterial to this part of the inquiry whether the construction company or the respondent acquired its power or capacity to carry out its part of the contract by aid of a franchise from the state, or from the city acting under the power delegated to it by the state, or from the act of the state coupled with the assent of the city. We quite agree with the court below that no new contract fixing the amount to be paid was created between the parties by the notice given on February 20, 1904, by the respondent relative to the change of its rates after March 1, 1904, and the continued use of the hydrants and water service after that date by the appellant. But if this act was ineffectual to create a new contract it was also ineffectual to disturb or discontinue existing contract relations, if any such there were. It would be going too far to say that a municipal corporation can never be liable upon implied contract; but the facts from which a contract will be implied against a municipal corporation are quite different from those which raise an implication of contract between natural persons, and the doctrine of implied contract is subject to many limitations in the case of such municipalities, among them that no contract will be implied if such implication would conflict with a statute prescribing a mode of contracting by which alone a city could bind itself. *Chippewa B. Co. v. Durand*, 122 Wis. 85, 99 N. W. 603; *Litchfield v. Ballou*, 114 U. S. 190, 5 Sup. Ct. 820. It is pertinent to inquire into the contract

relations of the parties on February 20, 1904, and on March 1, 1904. If there was then an existing express contract, no implied *assumpsit* could arise covering the same subject. *Tietz v. Tietz,* 90 Wis. 66, 62 N. W. 939, and cases in opinion. By the contract contained in the ordinance of November 4, 1881, the compensation of respondent was payable semi-annually on the first Mondays of February and August, in each year. The compensation agreed upon as hydrant rental covered all the services due from respondent to appellant under the contract of November 4, 1881, with all its modifications. But the amount of compensation agreed upon was fixed by a year's service or rental. Whether we regard the contract of November 4, 1881, as a contract by the respondent to furnish to the appellant water for twenty years expiring in 1901 and continued annually by mutual consent thereafter or an annual contract renewed by mutual consent each year, the result is the same. Whether we regard it as a rental or a contract for service, the result is the same. The common law relating to leases as well as that relating to contracts for service, taken with the statutes on this subject under discussion, all point to the conclusion that if no rental year or no year of service commenced or ended on March 1, 1904, and the parties had prior to that time entered upon the performance for the then current year, neither party was then at liberty to withdraw from or change the contract.

Referring to contracts for services, the cases are numerous which hold that the beginning of a new year's service without change or discussion of compensation at the end of a period of service for one year or more at a stipulated annual compensation constitutes a new hiring for a year upon the former terms, and neither party has thereafter and during the year the right to recede therefrom without cause. Hence neither party alone can add new terms or conditions after such new hiring has taken effect. *Dickinson v. Norwegian P. Co.* 101 Wis. 157, 76 N. W. 1108; *Kellogg v. Citizens'*

*Ins. Co.* 94 Wis. 554, 69 N. W. 362; *Laughlin v. School Dist.* 98 Mich. 523, 57 N. W. 571; *Chamberlain v. Detroit S. Works,* 103 Mich. 124, 61 N. W. 532; *Standard Oil Co. v. Gilbert,* 84 Ga. 714, 11 S. E. 491; *Adams v. Fitzpatrick,* 125 N. Y. 124, 26 N. E. 143, affirming *S. C.* 5 N. Y. Supp. 181. During the year for which both parties are thus bound, mere announcement by one to the other that he would charge more for or pay less for the services in question would be ineffectual to create a new contract. So in case of a lease either for twenty years with the lessee holding over from year to year after its expiration, or an annual lease with the lessee holding over and entering upon the next year, the rental fixed by the preceding lease would ordinarily be binding upon both parties during the lease year upon which they had entered. The landlord could not, after having elected to treat the tenant as holding over, and by mere notice that he would exact a different rental given without reference to the expiration of the lease year, impose a higher rental upon the lessee, or change in any manner the contract of the lessee who merely continued to occupy for the remainder of the term, as was his right at the time of such notice under existing contract relations. There are cases holding that by notice given before or at the expiration of the term, to the effect that the lessee, if he continue in possession after the expiration of such term, will be charged a higher rent, naming the sum, and silent acquiescence and continuance in possession by the defendant, a new lease is created on the terms of such notice. 2 Taylor, Landl. & T. (8th ed.) § 525, and cases; Wood, Landl. & T. sec. 13. But in such case, even where the notice is given at the end of a term and has reference to the next succeeding term, the presumed acquiescence of the tenant in the new rates is rebutted by proof of his refusal to assent to the terms of the notice, or by his making a counter proposition, notwithstanding he continues to enjoy the possession. *Galloway v. Kerby,* 9 Ill. App. 501. There is in

such case a mere rebuttable inference of fact with reference to the lessee's assent to the new terms stated in the notice, and in the instant case it is shown that the city did not assent to the terms of the notice, and that the notice was not given to take effect at the end of any lease year. If a tenant after the term of his lease continues to hold the thing demised, he does so subject to the terms and conditions of the expired lease. *Gilman v. Milwaukee*, 31 Wis. 563. When the election of the landlord to regard him as a tenant under the terms of the former lease is once made, the contract is mutually binding and continues for the year. The statutes of this state regulating the subject of contracts between municipal corporations and companies engaged in furnishing water impose upon the parties to such contract similar obligations and duties. Sec. 1780a, Stats. (1898), authorizes any corporation formed under general or special law for the purpose of constructing and operating waterworks in any city or village to make and enter into a contract with such city or village to supply the city or village with water for fire and other purposes upon such terms and conditions as may be agreed upon, and the city or village is authorized "by contract duly executed" to acquire the right to use the water supplied by such corporation, or such portion thereof as it may desire, upon such terms and conditions as may be agreed upon by such corporation and the authorities of such city or village. Sec. 959—48, Stats. (1898), speaking of the contract referred to in the preceding section, provides:

"When any such contract has heretofore been made or shall hereafter be made the common council or board of trustees, as the case may be, shall cause the amount agreed to be paid annually by such contract to be levied upon the taxable property of such city or village in pursuance of the terms of such contract, and the same shall be collected with other city and village taxes, as the case may be, for such year. Such amount, when so collected, shall constitute a separate fund and be kept

·separate and apart from the other funds of said city or village, and the same shall be paid out only for the purposes ·mentioned in such contract and as therein provided."

The charter of the city of *Appleton*—Laws of 1885, ch. -441, subch.V, § 2—as well as the general laws of this state— ·sec. 1081, Stats. (1898)—requires that the levy of taxes ·take place in November, or at least prior to December 1st, in each year.    The legal effect of sec. 959—48, Stats. (1898), ·is to make the contract in existence at the time of the tax ·levy the basis of the tax levy for the ensuing year.    This stat- ·ute applies to contracts made prior to its passage and to ·those contracts thereafter made.    The contract in question ·was renewed by the parties for the years 1902, 1903, and 1904, while this statute was in force.    And it is a very ele- ·mentary rule of the law of contracts that existing statutes ·applicable thereunto enter into and become a part of the con- tract.    *Morrow v. DeLaney,* 41 Wis. 149.    This statute, as ·well as sec. 1780*a,* Stats. (1898), requires the contract to be executed by the authorities of the city, to be in writing, and it¯ terms and the amount to become due thereunder to be known in advance of the tax levy, and to be made the basis of the tax levy for the purpose of raising a special fund; and the statutes in effect provide that the liabilities arising upon such contract are to be paid out of the fund thus raised.    In such case there can be no implied contract which presupposes a general liability.    2 Abbott, Mun. Corp. § 411, and cases. The parties having failed to agree upon any change in the terms of the written contract contained in the ordinance of November 4, 1881, and the respondent resting under legal duty to furnish the water, the terms of compensation fixed and provided by the written contract required by sec. 1780*a* must continue in force and binding upon the parties, at least for and during each annual renewal thereof by the acts of one party in furnishing and the other in receiving the serv- ice, in the instant case from November 4th of one year to

November 4th of the next year. This results in a reversal of the judgment of the court below, and might result in a dismissal of plaintiff's consolidated action but for the fact that the city of *Appleton* is here contending that it is liable only for the amount stipulated in the contract of November 4, 1881.

Other contentions are made, but we consider this contention sufficient to authorize us to order judgment in the plaintiff's favor for the several months' service for which this action is brought, based upon and measured by the provisions and terms of the contract of November 4, 1881, less the offset of $4,942.08 for taxes.

*By the Court.*—The judgment of the circuit court is reversed with costs in favor of appellant, and with directions to enter judgment in favor of the plaintiff in accordance with this opinion.