STANDARD OIL COMPANY, Appellant, vs. CITY OF CLINTON-VILLE, Respondent.

*April 6—May 5, 1942.*

For the appellant there was a brief by *Grady & Fairchild* of Portage, and oral argument by *Daniel H. Grady*.

*Clifford A. Mullarkey,* city attorney, for the respondent.

MARTIN, J.   On June 13, 1939, the respondent city, by a unanimous vote of all members of the city council, engaged Oconto county to do certain repair work and black-topping on some of the city streets.   The resolutions in that connection, adopted by the city council, provided as follows:

"(1)  That the city engage Oconto county to seal-top our black-topped streets and repair all portions of the streets in need of the same in accordance with the prices quoted in their letter dated May 26th, 1939, addressed to A. A. Washburn, Mayor.

"(2)  That Oconto county be engaged by the city of Clintonville to do the black-topping for the year 1939 as per prices set forth in their letter of May 26th, 1939, to the mayor."

On June 20, 1939, respondent city, by a unanimous vote of all members of the city council, adopted the following resolution:

"That the city purchase the Standard road oil No. 7 in tank car lots at 4.19 cents per gallon, f. o. b. Clintonville, it being understood that Mr. Whalen is to supervise the mixing and laying of the black-top, and it is also understood that the city is protected on the price for our needs this year."

On and between July 27 and September 21, 1939, appellant sold upon open account and delivered to the respondent city twenty-three carloads of road oil at the agreed price of 4.19 cents per gallon, f. o. b. Clintonville, and one carload of cut-back asphalt at the agreed price of 6.19 cents per gallon, f. o. b. Clintonville. The city paid plaintiff on account $2,041.41. This action was brought to recover the balance due in the sum of $7,991.32, with interest, since November 15, 1940. Each carload of material sold and delivered is made the basis of a separate cause of action. There is no dispute as to the quantity, quality, or the value of the material. The defense is, noncompliance with the public-works statute, sec. 62.15, in that the material was purchased without competitive bidding. It is further alleged as a defense that there was no certification by the comptroller that there were sufficient funds in the treasury to meet the expense of the black-topping project, or any certification by the comptroller that any provision had been made to pay for such project.

The liability of the city for payment of the material depends entirely upon whether sec. 62.15, Stats., requires competitive bidding where a city purchases material on open account, as was done in the instant case. Sec. 62.15 (1) provides:

"All public work, the estimated cost of which shall exceed five hundred dollars, shall be let by contract to the lowest responsible bidder; all other public work shall be let as the council may direct. The council may also by a vote of three fourths of all the members-elect provide by ordinance that any class of public work or any part thereof may be done directly by the city without submitting the same for bids."

Sec. 62.15 (2), Stats., provides:

"When the work is required or directed to be let to the lowest responsible bidder, the board of public works shall prepare plans and specifications for the same, containing a description of the work, the materials to be used and such other matters as will give an intelligent idea of the work required and file the same with the city clerk for the inspection of bidders, and shall also prepare a form of contract and bond with sureties required, and furnish a copy of the same to all persons desiring to bid on the work."

Sec. 62.15 (3), Stats., provides that after the plans and specifications and form of contract shall have been prepared the board of public works shall advertise for proposals for doing such work. Notice must be published in the official newspaper not less than once a week for two successive weeks. It further provides that no bid shall be received unless accompanied by a contract and bond with sureties.

The term "public work," as used in sec. 62.15 (1), Stats., contemplates something more comprehensive than the mere purchase of materials, which only become a part of public works when other materials and labor are added. The only reference to materials is found in subs. (2) and (7). Sub. (2) provides that where the work is required or directed to be let to the lowest responsible bidder, the board of public works shall prepare plans and specifications containing a description of the work and the *materials* to be used. It is obvious that where plans and specifications are required a description of the materials is necessary. Sub. (7) relates to the use of a patented article, materials, or process. In *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 92, 99 N. W. 603, the court said:

"Appellant's case depends primarily upon whether the word 'work' in sec. 13, subch. IV, of the respondent city's charter (ch. 252, Laws of 1887), is limited to the mere exercise of human energy, with or without the use of appliances to render the same efficient, instead of extending to the products of

such energy, such as a bridge, a building, or any one of a great many things that might be mentioned, *not mere matters of merchandise.*"

At page 93 the court said:

, "One of the most familiar rules for judicial construction would require the word 'work' as thus used to include the products of work *other than mere merchandise.*"

The charter of the city of Durand provided:

"Sec. 13. All contracts for work ordered by the common council of said city, the expense whereof shall exceed the sum of $50, shall be let to the lowest reasonable and responsible bidder who shall have complied with the requirements hereinafter set forth. All bids and proposals shall be sealed and directed to the common council, and shall be accompanied with a bond to the city in a penal sum equal to the amount of the bid, which bond shall be signed by the bidder and by a responsible surety, who shall justify that he is worth the sum mentioned in such bond over and above all debts, liabilities and exemptions; such bonds shall be conditioned that such bidder will execute a contract at such time as the common council shall require, with satisfactory sureties, to perform the work specified; and in case of failure said bond may be prosecuted in the name of the city, and judgment recovered thereon for the full amount of the penalty thereof, as liquidated damages, in any court having the jurisdiction of the action."

This language is quite similar to that used in some of the subsections of sec. 62.15, Stats. It covers the letting of contracts for public works.

It is important to note that as to villages, sec. 61.55, Stats., provides:

"All contracts for the performance of any work *or the purchase of any materials,* in any such village, exceeding five hundred dollars, shall be let by the village board to the lowest bidder in such manner as they may prescribe."

Prior to the amendment of 1907, the provision as to villages read:

"All contracts for the performance of any work in any such village, exceeding fifty dollars, shall be let . . . to the lowest bidder."

By ch. 245, Laws of 1907, the legislature amended the statute by inserting the words "or the purchase of any materials." With this subject matter before it for consideration in 1907, the fact that the legislature made no change in the provisions of sec. 62.15 (1), Stats., relating to the letting of contracts for public works in cities, seems rather persuasive that the legislature deliberately chose not to prohibit cities from purchasing materials to be used in public works, even though the aggregate of the purchase price might exceed $500, without competitive bidding for such materials.

The parties stipulated and the court found that no contract existed for the furnishing of any specified amount of oil. The resolution of June 20, 1939, fixed the price per gallon, f. o. b. Clintonville. No formal contract was entered into. The plaintiff agreed to protect the city on the price of oil for its needs during the season of 1939. The city purchased upon open account as its need required. It was at liberty to cease purchasing from the plaintiff at any time and could have purchased from other companies if it so desired.

The respondent contends that the case is ruled in its favor by *Bechthold v. Wauwatosa,* 228 Wis. 544, 277 N. W. 657, 280 N. W. 320, and the cases there cited. The facts there are clearly distinguishable from those in the instant case. That case involved the completion of an entire public-works project, which, of course, included the materials specified, the labor, and the cost of the completed job. While the city of Clintonville had no ordinance authorizing it to engage directly in any class of public work, it arranged with Oconto county to do the work referred to in the two resolutions of June 13, 1939. It employed and paid for the necessary labor. We cannot segregate the various items, such as labor, materials, rental of machinery and equipment, and classify any

single item as a public work within sec. 62.15, Stats. We are of the view that sec. 62.15 is not applicable to the material purchased from the plaintiff by the respondent city, and that the city is liable for the purchase price thereof.

The defense that there was no certification by the comptroller that there were sufficient funds in the treasury to meet the expense of the black-topping project, or any certification that provision had been made to pay for such project, under sec. 62.15 (12), Stats., must fail for the reasons above stated. The statute is not applicable to the facts in the instant case. Also, since the city had power to purchase the material in question, it may become liable upon principles of unjust enrichment. *Shulse v. Mayville,* 223 Wis. 624, 629, 271 N. W. 643. The city received, used, and has had the benefit of the material. There is no issue as to the value.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment in favor of the plaintiff against the defendant for the sum of $7,991.32, with interest, since November 15, 1940.