ELLERBE & COMPANY, Appellant, vs. CITY OF HUDSON, Respondent.*

*May 6—June 4, 1957.*

* Motion for rehearing denied, with $25 costs, on September 10, 1957.

150

For the appellant there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *John Doar*.

For the respondent there was a brief by *Lawrence P. Gherty,* attorney, and *Robert A. Forsythe* of counsel, both of Hudson, and oral argument by *Mr. Gherty*.

CURRIE, J.  The following three issues confront the court upon this appeal:

(1) Did the hospital board of trustees possess authority in behalf of the defendant city to enter into a valid contract with the plaintiff architectural firm for the furnishing of

architectural services in connection with the erection of the proposed new municipal hospital building?

(2) If such board of trustees did not possess such authority, then did the common council of the defendant city later ratify the contract so as to make the same a binding obligation against the city?

(3) If there was neither a valid contract to begin with, nor subsequent effective ratification by the common council, is the plaintiff entitled to recover on *quantum meruit*?

The only statute cited to us by counsel, or which we have been able to find, dealing with the power and authority of a municipal board of hospital trustees is sec. 66.50, Stats.[1]

[1] Sec. 66.50, Stats., provides: "(1) In any city or village, however organized, having a municipal hospital therein, the board of trustees or other governing board of such municipal hospital shall have power and authority, except as otherwise provided by ordinance:

"(a) To prescribe rules of order for the regulation of their own meetings and deliberations and to alter, amend, or repeal the same from time to time;

"(b) To enact, amend, and repeal rules and regulations relating to the government, operation, and maintenance of such hospital and relating to the employees thereof;

"(c) To contract for and purchase all fuel, food, and other supplies reasonably necessary for the proper operation and maintenance of such hospital;

"(d) To enact, amend, and repeal rules and regulations for the admission to and government of patients at such hospital;

"(e) To enter into contract for the construction, installation, or making of additions or improvements to or alterations of such hospital whenever such additions, improvements, or alterations have been ordered and funds provided therefor by the city council;

"(f) To engage all necessary employees at such hospital for a period not to exceed one year under any one contract and at a salary not to exceed the sum of twenty-five dollars per week, excluding board and laundry, unless a larger salary be expressly authorized by the city council;

"(g) To audit all accounts and claims against said hospital or against said board of trustees and, if approved, such shall be paid by the city or village clerk and treasurer in the manner provided by section 66.042.

"(2) All expenditures made pursuant to this section shall be within the limits authorized by the governing body of the municipality."

We consider that the only subsection of such statute which would be broad enough to cover contracting for architectural services is sub. (1) (e). However, a close reading of such subsection discloses that it does not apply to the construction of an entirely new hospital building, such as was contemplated in the instant case. Instead, it only refers to "additions, improvements, or alterations" of an existing hospital.

In view of the fact that the legislature has specifically enumerated the powers of such a board of hospital trustees in sec. 66.50, Stats., and the power to contract for architectural services in connection with the erection of an entirely new hospital building is not either expressly nor impliedly included within such enumerated powers, we doubt if the common council could delegate such power to the board of hospital trustees. The only provision in the ordinance of March 18, 1946, creating a board of hospital trustees, which possibly would be broad enough in scope to include contracting for such architectural services, is that hereinbefore quoted in the statement of facts preceding this opinion. However, this quoted provision contained the express limitation that no contract in connection with the construction of the hospital could be entered into by the board of trustees unless *"expressly authorized by the common council and the funds provided therefor."* As neither of these two conditions precedent were complied with, we necessarily reach the conclusion that the board of trustees had no power to enter into the contract with plaintiff upon which plaintiff bases its cause of action.

The plaintiff endeavors to escape from the effect of such lack of authority in the board of hospital trustees, to enter into the contract in the first place, by invoking the doctrine of ratification. Such claim of ratification is based upon the fact that the statement of plaintiff's claim for the $3,600, which was presented to the council covering plaintiff's services for preparing the preliminary drawings, stated on its

face that the plaintiff had a contract entitling it to a fee of six per cent of the estimated cost of $300,000 for the hospital building to be constructed. It is contended that, when the council approved and ordered paid such claim, it thereby ratified the contract and made the city bound thereby.

The plaintiff places great reliance upon the case of *Koch v. Milwaukee* (1895), 89 Wis. 220, 62 N. W. 918. In that case a taxpayers' action was instituted to restrain the city from paying a statement submitted by a firm of architects for services and expenses in connection with preparing plans and specifications for a building to be used by the city library and museum. The trustees of the library and museum had contracted for such services and not the common council. The court held that the power to contract for such architectural services was vested in the council and not the trustees. However, it was further determined that, if the injunction prayed for were granted, the council would be prevented from ratifying the acts of the trustees and this a court of equity should not do. The following statement in the opinion is significant (p. 228):

"A municipal corporation may ratify the unauthorized acts and contracts of its agents which are within the scope of its corporate powers, and such ratification is equivalent to previous authority."

*Wade v. Sheboygan County* (1918), 167 Wis. 98, 166 N. W. 774, is another case in which this same principle of ratification was invoked. The power to contract for services to superintend the construction of bridges was vested in a certain committee of the county board. The plaintiff, who was a town chairman, without any authorization from such committee, superintended the construction of four bridges and submitted a bill to the committee in the sum of $23.90 to cover such services. The committee unanimously approved the bill and it was submitted to the county board for payment. The county board refused to order it paid and the

plaintiff instituted suit to compel payment. This court held that the plaintiff was entitled to recover and stated (p. 99) :

"And when the committee, with full knowledge of all the facts, approved of the bill, the acts of plaintiff in superintending the construction of the bridges became as lawful as if he had been directed by it in the first instance to do so; and the county board could not lawfully disallow the claim because it was a just one and legally incurred. Under familiar principles public officers may ratify those acts of an agent which they had authority to direct him to do when done and which they could authorize at the time of ratification. Mechem, Pub. Off. sec. 534; *Koch v. Milwaukee,* 89 Wis. 220, 62 N. W. 918; *Frederick v. Douglas Co.* 96 Wis. 411, 424, 71 N. W. 798."

However, when ratification is relied upon in order to enforce a contract against a municipality, which contract was entered into without authority of the proper municipal officer, board, or governing body, the acts relied upon for ratification must be sufficient to have supported a contract originally. This principle is well illustrated by the case of *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 99 N. W. 603. There a contract for the construction of a bridge was let by the defendant city without compliance with a charter provision which required that the contract be let to the lowest bidder. One of the grounds upon which the plaintiff contractor sought to recover against the city was ratification. This court stated the following reasons why the plaintiff could not recover on the theory of ratification (p. 96) :

"The plea of ratification of a contract made in violation of a charter provision such as the one under discussion is of no avail unless the acts relied upon for ratification would be sufficient to support a contract as an original matter. *Zottman v. San Francisco, supra* [20 Cal. 96] ; Tiedeman, Mun. Corp. sec. 170; 1 Beach, Pub. Corp. sec. 251; *Caxton v. School Dist.* 120 Wis. 374, 98 N. W. 231. So it follows

that, if the manner the respondent city was required by its charter to contract for the bridge was not substantially followed, no liability to pay therefor was incurred, the disbursement of public money on account of the same was illegal, and the fact that the desired bridge was secured by the municipality cannot affect the result of this action as to it."

Sec. 62.09 (10) (f), Stats., provides that the city comptroller shall countersign "all contracts with the city if the necessary funds have been provided to pay the liability that may be incurred thereunder, *and no contract shall be valid until so countersigned.*" If the common council had itself authorized the proper city officers to enter into a contract with the plaintiff architectural firm, this statute would have made it imperative that funds be appropriated, or otherwise provided, to finance the city's liability under the contract, before the city comptroller could have legally countersigned the contract. Where no funds have ever been provided by the council for the purposes of plaintiff's contract, can the council later effectively ratify the contract without first providing such funds? We think not, and so hold. Obviously the objective of such statute is to protect the taxpayers of a municipality so that no debt will be incurred by a contract before the funds necessary to discharge such liability have been provided. It stands in the same category as does a statutory requirement, that certain municipal contracts must be let to the lowest bidder, in that the common council has no power to waive compliance with the same either at the time of the inception of a contract or at the time of a subsequent attempt to ratify the same.

Our conclusion, as to the objective sought to be achieved by sec. 62.09 (10) (f), Stats., is supported by the decision of our court in *White Construction Co. v. Beloit* (1922), 178 Wis. 335, 190 N. W. 195. In that case present sec. 62.09 (10) (f), then sec. 925–45, had not been complied with in that the comptroller of the defendant city had not

countersigned a contract for paving. The court held that this was fatal to the plaintiff contractor's right to recover and stated (pp. 337, 338):

"The provisions of the statutes relating to the execution of contracts by cities are part of a general legislative scheme to require public officials, in incurring liability on behalf of the city, to provide at the same time the funds out of which the liability may be met. The statute prescribes clearly and in considerable detail the exact procedure which shall be followed in the execution of contracts. The provision that the contract if not so executed shall be void, in our opinion makes the statute clearly mandatory, and the failure to comply therewith is fatal to the validity of the contract. To hold that it is not so is destructive of the very object and purpose of the statute."

See also *Superior v. Norton* (7th Cir. 1893), 12 C. C. A. 469, 63 Fed. 357, in which the circuit court of appeals for the Seventh circuit dealt with this same statute. It was therein held that such statute was not limited in scope to construction contracts negotiated by the board of public works, although present sec. 62.15 (12), Stats., was construed to be so limited. We are confident that *Standard Oil Co. v. Clintonville* (1942), 240 Wis. 411, 3 N. W. (2d) 701, would have been decided differently than it was if sec. 62.09 (10) (f) had been cited to the attention of the court instead of merely sec. 62.15 (12).

Recovery by the plaintiff cannot be predicated upon a cause of action in *quantum meruit* based upon unjust enrichment, or restitution. In this respect the instant case is squarely governed by the following statement appearing in *Shulse v. Mayville* (1937), 223 Wis. 624, 629, 271 N. W. 643:

"A municipality does not become liable for money, services, or goods upon principles of unjust enrichment where it is prohibited from contracting in any other than a specified way, as, for instance, with the lowest bidder. *Caxton Co. v. School District* (1904), 120 Wis. 374, 98 N. W. 231;

*Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 99
N. W. 603; *Appleton Waterworks Co. v. Appleton* (1907),
132 Wis. 563, 113 N. W. 44; *Neacy v. Milwaukee* (1920),
171 Wis. 311, 176 N. W. 871; *Journal Printing Co. v.
Racine* (1933), 210 Wis. 222, 246 N. W. 425."

The foregoing holding in *Shulse v. Mayville, supra,* was
adhered to in the later case of *Federal Paving Corp. v.
Wauwatosa* (1939), 231 Wis. 655, 286 N. W. 546. The
court therein cited with approval *White Construction Co. v.
Beloit, supra,* and quotes an extract from the opinion in
such case. Furthermore, the opinion in the *Federal Paving
Corp. Case* also points out that the denial of recovery on
*quantum meruit* in such type of case is in accord with Re-
statement, Restitution, p. 241, sec. 62. This is because to
permit recovery on principles of quasi contract "would se-
riously impair the protection intended to be afforded" by
statutes of the character before the court in both the *White
Construction Co.* and *Federal Paving Corp. Cases.*

*By the Court.*—Judgment affirmed.

The following opinion was filed September 10, 1957:

PER CURIAM (*on motion for rehearing*). The plaintiff
in support of its motion for rehearing has filed an affidavit
of counsel to the effect that the defendant city has never
had a comptroller. In passing on such motion, we deem
that we should not consider such affidavit but are concluded
by the original record. Such record is silent on the question
of whether the city did have a comptroller at the time the
hospital trustees entered into the contract with the plaintiff
and the city council later approved payment of plaintiff's
claim for $3,600.

Under the provisions of sec. 62.09 (1) (a), Stats., a
comptroller is one of the enumerated officers of a city. How-
ever, sec. 62.09 (1) (b) authorizes a city by two-thirds

vote of the council to dispense with the office of comptroller "and provide that the duties thereof be performed by other officers or board, by the council or a committee thereof." Therefore, if the office of comptroller is so dispensed with, his duties are to be conferred upon some other officer, board, or committee of the council, or be vested in the council itself. Merely dispensing with the office of comptroller does not render inapplicable the provisions of sec. 62.09 (10) (f).

The referee specifically found in his findings of fact:

"That the common council of the city of Hudson made no appropriation of funds for preliminary plan and working drawings and specifications for a municipal hospital, except that the claim of Ellerbe & Company for $3,600 . . . was paid."

There is no evidence as to the amount of available funds of the city at the time the council voted allowance of plaintiff's $3,600 claim. The burden of proof was upon the plaintiff to establish an effective ratification by the council of the contract entered into between the hospital trustees and the plaintiff. In so far as proving compliance with sec. 62.09 (10) (f), Stats., is concerned, we deem the very minimum evidence to be that the city, at the time the alleged ratification took place, had sufficient unappropriated funds to meet its liability under the contract previously entered into between plaintiff and the hospital trustees. Whether in addition thereto it was necessary for the plaintiff to prove more than this we leave undecided.

The motion for rehearing is denied with $25 costs.